The STATE of Ohio, Appellee,

v.

HALL, Appellant.

[Cite as *State v. Hall* (2001), 141 Ohio App.3d 561.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 00CA23.

Decided March 21, 2001.

*Jeffrey M. Smith*, Lawrence County Assistant Prosecuting Attorney, for appellee.

*Evans, St. Clair & Bainter, L.L.P.,* and *J. Michael Evans*,[1] for appellant.

PETER B. ABELE, Presiding Judge.

This is an appeal from a Lawrence County Common Pleas Court judgment denying a request by Todd M. Hall, defendant below and appellant herein, to seal his court-ordered psychiatric evaluation(s) and to excuse his presence from all future commitment hearings.[2] The following errors are assigned for our review:

First Assignment of Error:

"The trial court erred to the prejudice of defendant by its denial of defendant–appellant's motion to seal medical records, which violated defendant–appellant's right of privacy, the physician–patient privilege, and the dictates of O.R.C. Section 5122.31."

Second Assignment of Error:

"The trial court erred to the prejudice of defendant–appellant by its denial of his motion to hold hearings without requiring his presence. Defendant–appellant has the right to waive his appearance at R.C. Section 2945.401 hearings, and that right can be exercised by his guardian."

The record reveals the following facts pertinent to this appeal. On the afternoon of July 3, 1996, appellant walked into the "Ohio River Fireworks" store in Scottstown, Ohio, with a lit cigarette in his mouth. He nonchalantly walked to the back of the store and held the lit cigarette to one of the fireworks. The firework ignited and, in turn, ignited other fireworks and turned the building into an inferno. As a result of the ensuing carnage, nine people died and various other people received injuries.

In August 1996, the Lawrence County Grand Jury returned an indictment charging appellant with one count of aggravated arson in violation of R.C. 2909.02(A)(2), three counts of aggravated arson in violation of R.C. 2909.02(A)(1), and nine counts of involuntary manslaughter in violation of R.C. 2903.04(A). Appellant pled not guilty and not guilty by reason of insanity to all charges.

Early in the proceedings it came to the court's attention that appellant suffered from some rather serious cognitive problems. A September 1996 competency evaluation revealed that appellant had experienced a "skateboard mishap" when he was a teenager that left him with a "basilar skull fracture." As a result of that injury, appellant spent two and one half months in a coma as a result of that

---

1. Appellant has been represented by several different counsel throughout the course of these proceedings.

2. This case was reassigned from Judge Evans to Judge Abele on February 7, 2001.

"mishap" and eventually underwent "a right temporal and frontal lobectomy" as treatment for his injuries. The surgery left appellant with "severe behavioral problems," which, over the years, were alternatively diagnosed as "Organic Brain Syndrome," "frontal lobe syndrome," "Organic Personality Disorder, Explosive type," and "Organic Mental Disorder Secondary to Head Trauma."

Gary Bevin, M.D., a psychiatrist with the Shawnee Forensic Center, reviewed appellant's medical records and conducted his own examination. Dr. Bevin concluded that appellant was "psychiatrically ill and mentally disordered." Dr. Bevin related that the prior injury to appellant's frontal lobes had produced perfect textbook examples of expected symptoms such as "lack of judgment or foresight, facetiousness, disinhibitation, and euphoria." He continued that, as a result of these problems, appellant would require "life-long psychiatric, neurological and psychological treatment" as well as extensive "psychotropic" medication. Dr. Bevin opined that appellant (1) was not competent to proceed to trial, (2) did not demonstrate an adequate understanding of the nature of the proceedings against him, and (3) would be unable to assist in his own defense.[3] Dr. Bevin recommended that appellant be confined to the "Central Ohio Psychiatric Hospital's maximum security forensic unit," where he could be treated in an attempt to restore competency.

The matter came on for hearing at which time both parties stipulated to the competency evaluation. On September 18, 1996, the trial court concluded that appellant was incompetent to stand trial and ordered that he undergo treatment at the recommended facility in hopes of restoring competency. The court revisited the matter in December 1996 and June 1997. Both times, the court ordered that appellant remain hospitalized and continue to receive treatment.

On September 12, 1997, the state filed a motion, pursuant to R.C. 2945.39(A)(2), asking the trial court to retain jurisdiction over the case.[4] Howard Sokolov, M.D., Consulting Forensic Psychiatrist, reviewed appellant's medical records, met

---

3. Concern was also expressed that appellant's impulsivity and tendency toward disruptive behavior could undermine a trial "*e.g.*, by singing, cursing, or inadvertently attracting attention to himself by restless, hyperactive behavior."

4. If a defendant is found incompetent to stand trial, the trial court shall order the defendant to undergo treatment at an appropriate facility. R.C. 2945.38(B). However, no defendant shall be ordered to undergo treatment for more than a year if the most serious offense with which he was charged is a first degree felony. *Id.* at (C). Involuntary manslaughter is a first degree felony, R.C. 2903.04(C), and, thus, appellant could not be confined for more than one year in the psychiatric institution. Nevertheless, the trial court could retain jurisdiction if certain conditions are met and have the defendant committed to an appropriate institution for treatment. See R.C. 2945.39(A)(2) and (D). We acknowledge that R.C. 2945.38 was just recently struck down as unconstitutional by the Ohio Supreme Court, *State v. Sullivan* (2001), 90 Ohio St.3d 502, 739 N.E.2d 788. That decision has no bearing on the issues before us in this case, however.

with him, evaluated his condition, and concluded that appellant remained incompetent to stand trial. Dr. Sokolov related that appellant demonstrated residual effects from his childhood head injury and exhibited severe "distractability, hyperactivity and impulsiveness" that seriously impair his ability to understand the proceeding against him or to assist in his own defense. Dr. Sokolov recommended that appellant remain hospitalized in the "maximum security unit" at the "Twin Valley Psychiatric System."

Once again, both parties stipulated to the psychiatric evaluation. On September 17, 1997, the trial court found, by clear and convincing evidence, that (1) appellant had perpetrated the offenses with which he had been charged, and (2) that appellant remained mentally ill and subject to hospitalization. Accordingly, the court retained jurisdiction and ordered appellant's continued commitment to the hospital where he was receiving treatment. The matter came on for further consideration in March 1998 and March 2000. Each time the court determined that continued commitment and treatment were appropriate.

On April 3, 2000, appellant filed a motion requesting that the court "permanently seal" his psychiatric evaluations and any other medical records included in this case. Appellant argued that R.C. 5122.31 mandates that such records be kept confidential and that, in any event, he had a right of privacy therein. He also asked that he be allowed to remain absent from any further commitment hearings. Appellant averred that he had repeatedly been found incompetent and unable to assist his counsel. Thus, it would be "counterproductive" to treatment and serve "no good purpose" to continue to require appellant's presence at court hearings.

The state's memorandum in opposition that appellant's court-ordered psychiatric evaluations were public records to which the public had a right of access under both "Ohio's Open Records Act," as well as the general principle that judicial proceedings and records thereof should be open to the public. Further, the state objected to appellant being excused in advance from future competency hearings. The state argued that "[n]o evidence had been presented which would suggest that his attendance at these proceedings [was] detrimental," and that appellant's right to be present "should be judiciously guarded." The state noted that the failure to do so could haunt the court in later proceedings.[5]

On May 5, 2000, the trial court overruled appellant's motion in its entirety. The court found that appellant's medical reports and evaluations, kept as part of

---

5. In particular, the state noted that appellant could change counsel in future proceedings and that new counsel "may be of the opinion that [appellant's] right to be present at all proceedings in this case should not have been waived, and challenge the validity of [the court's rulings] based on that claim."

these proceedings, were "public records" and could not be sealed or kept confidential. Further, with respect to appellant's "waiver" of his right to be present at future competency hearings, the court reasoned that he had been deemed incompetent and thus could not knowingly waive that right. This appeal followed.

## I

Appellant argues in his first assignment of error that the trial court erroneously denied his motion to "seal" his "medical records." We begin our analysis of that argument by defining the issue posited for our review. There are, in fact, no "medical records" in the file of this case. Rather, there are psychiatric evaluations prepared so that the trial court could determine appellant's competency to stand trial. The psychiatric evaluations are the reports appellant seeks to seal from public view. He has not sought, and does not request, an order to seal the records maintained by the psychiatric hospital where he has been committed and is receiving treatment.

Historically, a common-law right of access exists with respect to judicial records and documents. See *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.* (1995), 73 Ohio St.3d 19, 22, 652 N.E.2d 179, 183; See also *State ex rel. Cincinnati Enquirer v. Clermont Cty. Court of Common Pleas* (May 2, 1988), Clermont App. No. CA88–04–033, unreported, 1988 WL 41541. Ohio's Public Records Act also requires that "public records" be made available for inspection. R.C. 149.43(B)(1). It is well settled that any document pertaining to a court proceeding, or any record necessary to the execution of the responsibilities of a governmental unit, is a "public record" within the meaning of R.C. 149.43. Such record must be made available for public inspection unless there is a specific statutory exclusion which applies. *State ex rel. Mothers Against Drunk Drivers v. Gosser* (1985), 20 Ohio St.3d 30, 20 OBR 279, 485 N.E.2d 706, at paragraph one of the syllabus; *Potchen v. Kelly* (1998), 130 Ohio App.3d 21, 26, 719 N.E.2d 570, 573; *State ex rel. Swigart v. Barber* (1997), 118 Ohio App.3d 238, 240, 692 N.E.2d 639, 640.

We believe that the psychiatric evaluations at issue in the instant case are judicial records or documents submitted to the court to assist it in its responsibility to determine whether appellant is competent to stand trial. As such, the evaluations are "public records" that must remain open to inspection, under both common law and R.C. 149.43, unless appellant can show some authority to the contrary.

Appellant argues that his psychiatric evaluations should be exempted from the Public Records Act because they are "medical records." We are not

persuaded. It is true that "medical records" are excluded from the rubric of "public records" that must remain open for inspection. R.C. 149.43(A)(1)(a). However, "medical records" are defined for purposes of this statute as documents that are "generated and maintained in the process of medical treatment." *Id.* at (A)(3). Medical reports compiled for reasons other than "medical treatment" do not fall within this exception. See, *e.g., State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 144–145, 647 N.E.2d 1374, 1379; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 214, 611 N.E.2d 838, 846. As the trial court aptly noted below, the psychiatric reports at issue in this case were not generated as a part of appellant's "medical treatment." The reports at issue were compiled solely to assist the court in determining whether appellant was competent to stand trial. Thus, those reports are not "medical reports" exempt from public disclosure requirements.

■ Appellant also cites the R.C. 2317.02(B)(1) "physician-patient privilege" and suggests that this provision requires that his psychiatric evaluations be sealed. Again, we are not persuaded.

■ R.C. 2317.02(B)(1) states, *inter alia,* that a physician shall not testify as to any communication made by a patient to the physician in the course of that relationship. This is a testimonial privilege and has no bearing in those instances such as the instant case in which a court must consider whether to make available to the public a report already prepared by a psychiatrist. Moreover, the physician-patient privilege attaches only when a person consults a doctor for treatment or diagnosis and does not extend to the situation when the doctor is hired to render an opinion for purposes of litigation. See, *e.g., State v. Fears* (1999), 86 Ohio St.3d 329, 343, 715 N.E.2d 136, 150; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 552–553, 679 N.E.2d 321, 341–342. In the case *sub judice,* the doctors prepared the evaluations for purposes of determining appellant's competency to stand trial. Those evaluations were not prepared in the course of a traditional physician-patient relationship (*i.e.,* when treatment is being sought and provided) and, hence, these evaluations are not privileged under R.C. 2317.02(B)(1).

■ Appellant also asserts that R.C. 5122.31 is "directly applicable to these proceedings and appears to be dispositive." That statute provides:

"All certificates, applications, records, and reports made for the purpose of this chapter and sections 2945.38, 2945.39, 2945.40, 2945.401, and 2945.402 of the Revised Code, other than court journal entries or court docket entries, and directly or indirectly identifying a patient or former patient or person whose hospitalization has been sought under this chapter, shall be kept confidential and shall not be disclosed by any person. * * *"

To begin, it is not entirely clear whether this statute applies to the case *sub judice*. R.C. Chapter 5122 deals with psychiatric hospitals and other similar institutions. We find nothing in that chapter generally, or in R.C. 5122.31 in particular, which suggests that the statute is meant to govern trial courts and to require courts to keep competency evaluations confidential. Appellant cites no case law in which the statute has been construed in that manner and we have found none in our own research.[6]

 Additionally, we find nothing in the statute to suggest that it is meant to carve out another exception to the public records requirements of R.C. 149.43. Had that been the General Assembly's intent, surely they could have more clearly accomplished that objective and simply made those records exempt from disclosure under the myriad exceptions to the definition of a "public record." We are mindful that public records laws should be liberally construed so as to ensure that records are open and available to the public. *State ex rel. Rea v. Ohio Dept. of Edn.* (1998), 81 Ohio St.3d 527, 530, 692 N.E.2d 596, 600; *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 518, 687 N.E.2d 661, 668; *State ex rel. The Miami Student v. Miami Univ.* (1997), 79 Ohio St.3d 168, 170, 680 N.E.2d 956, 958. Conversely, exemptions from disclosure are to be strictly construed. *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d, 261, 266, 685 N.E.2d 1223, 1228; *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1997), 78 Ohio St.3d 518, 519, 678 N.E.2d 1388, 1389; *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911, 912. In the absence of some clearer indication that R.C. 5122.31 overrides common law and statutory mandates that court records be open to the public, we decline to construe the statute in that manner.

 Even assuming, *arguendo*, that the statute does apply, we would still find no violation of its provisions. A number of exceptions are made to the confiden-

---

6. To the contrary, the few cases we have found citing this statute discuss that provision relative to psychiatric hospitals or other such institutions. See, *e.g., Hanly v. Riverside Methodist Hosp. Found., Inc.* (1991), 71 Ohio App.3d 778, 781, 595 N.E.2d 429, 431; *Green v. W. Res. Psychiatric Habilitation Ctr.* (1981), 3 Ohio App.3d 218, 219, 444 N.E.2d 442, 443; *Natl. City Bank v. Rainer* (Aug. 12, 1999), Franklin App. No. 98AP–1170, unreported, 1999 WL 604150; *Parker v. Bd. of Edn.* (Mar. 11, 1988), Lucas App. No. L–87–028, unreported, 1988 WL 30518; *Weidenborner v. Ohio Dept. of Mental Health* (Jun. 24, 1986), Franklin App. No. 85AP–995, unreported, 1986 WL 7173; *Pacheco v. Ortiz* (1983), 11 Ohio Misc.2d 1, 2, 11 OBR 43, 44–45, 463 N.E.2d 670, 673. The only authority we have found that even remotely appears to support the applicability of this statute to trial courts is 1977 Ohio Atty. Gen. Ops. No. 43 wherein the Attorney General opined that R.C. 5122.31 did not prohibit a probate court from allowing access to court indices noting mental illness matters. It was reasoned that such notations fell within the parameters of journal or docket entries and was permitted under the statute. Although the Attorney General found that such actions did not violate the statute, he obviously would not have reached that conclusion without first determining that the statute applied. While we view the 1997 opinion as persuasive authority, we are not bound by the opinion, and we conclude that the statute is inapplicable.

tiality requirements of R.C. 5122.31, including, *inter alia,* "a court order signed by a judge." *Id.* at (D). The trial court's May 5, 2000 judgment entry constitutes as such an order and, thus, no violation of the statute has occurred.

Finally, appellant argues that the public's "right to know" under R.C. 149.43 must be balanced with his generalized right of privacy codified at R.C. Chapter 1347. He points out that the Supreme Court requires the following factors to be considered in balancing those interests:

"(1) Whether disclosure would result in an invasion of privacy and, if so, how serious; (2) the extent or value of the public interest, purpose or object of the individuals seeking disclosure; and (3) whether the information is available from other sources." *State ex rel. Public Employees Retirees, v. Pub. Emp. Retirement Sys.* (1979), 60 Ohio St.2d 93, 95, 397 N.E.2d 1191, 1193; *Wooster Republican Printing Co. v. Wooster* (1978), 56 Ohio St.2d 126, 135, 383 N.E.2d 124, 129.

We have considered those factors and are not convinced that appellant has made a showing sufficient to keep his psychiatric evaluations confidential.

To be sure, allowing the evaluations to remain open to the public, along with the other records in this case, works some small degree of privacy invasion. The issue, however, is whether that invasion is inordinately severe. We do not believe that to be the case. Information contained in the most recent evaluation is no more intrusive or embarrassing than the information contained in past evaluations, which have been available to the public for the last five years. Also, appellant has not shown that his treatment would be hindered or that he would be irreparably damaged by the evaluations being open to public examination. We are keenly aware that there is great public interest in this case and that the information cannot be obtained from any other source. Nine people died at the "Ohio River Fireworks" store and several other people were injured. There has never been any question that appellant caused this tragedy and, yet, appellant has not been required to confront the civil charges lodged against him. The public has a right to know why. In the absence of some affirmative showing that appellant would be irreparably harmed or damaged by not keeping that information confidential, we err on the side of openness and conclude that the psychiatric evaluations should be made available for public inspection.

Accordingly, we overrule appellant's first assignment of error.

## II

Appellant argues in his second assignment of error that the trial court erred in denying his request to be excused from all future competency hearings. We disagree.

To begin, this court does not dispute the abstract proposition that a person can waive the right to be present at a hearing. As was correctly noted below,

however, appellant was found incompetent and could not properly waive that right. Appellant counters by asserting that his father, James Hall, was appointed as his legal guardian and he could have waived his right to be present at the hearing. While in theory appellant's position may be true, we find nothing in the record of this case to definitively show that a guardianship was ever established[7] and we find nothing in appellant's motion below to indicate that his father waived that right on his behalf.[8]

We additionally note that appellant's request was premature. No impending hearing existed when appellant made the motion below and none was scheduled for the immediate future. Also, no evidence was adduced to support his claim that he would be unable to assist his counsel and that to require his presence would be "counterproductive." Indeed, it would be somewhat difficult to provide evidence pertaining to some future event. This request was also over broad. Appellant not only sought to be excluded from the next scheduled competency hearing but, presumably, from all future hearings in perpetuity. Assuming, *arguendo*, that appellant would regain competency someday, he may then be forced to petition the court to allow him to do that which he has a right to do already (*i.e.*, appear at the hearing). The better practice would be for appellant to wait until a hearing is actually scheduled and then, if he still wants to be excused, file a motion with appropriate supporting documentation asking for such relief. We find nothing in the trial court's May 5, 2000 judgment that would prohibit appellant from renewing his request under appropriate circumstances and in an appropriate manner. The second assignment of error is accordingly overruled.

Having reviewed both assignments of error, and finding merit in neither of them, we affirm the trial court's judgment.

*Judgment affirmed.*

HARSHA and EVANS, JJ., concur.

---

7. Appellant's brief contains as an exhibit "Letters of Guardianship" issued by the Guernsey County Court of Common Pleas, Probate Division, purporting to appoint Mr. Hall as his son's guardian. This document does not appear anywhere else in the record, however, and we are precluded by App.R. 12(A) from considering exhibits attached to a brief that were not made a part of the trial court proceedings. *Isbell v. Kaiser Found. Health Plan* (1993), 85 Ohio App.3d 313, 318, 619 N.E.2d 1055, 1058; *Merillat v. Fulton Cty. Bd. of Commrs.* (1991), 73 Ohio App.3d 459, 463, 597 N.E.2d 1124, 1127.

8. It is important to note that appellant's counsel was representing his interests below, rather than that of a guardian, and nothing in the motion (*e.g.*, an affidavit, etc.) indicates that anyone else attempted to waive appellant's rights.