**Herman Dale ASHWORTH, Petitioner,**

v.

**Margaret BAGLEY, Warden,
Respondent.**

No. 2:00 CV 1322.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 11, 2005.

Herman Andrew Carson, Sowash Carson & Ferrier, Athens, OH, Carol Ann Wright, Columbus, OH, for Petitioner.

Henry G. Appel, Karhlton Moore, Matthew C. Hellman, Ohio Attorney General, Heather L. Gosselin, Assistant Attorney General, Columbus, OH, for Respondent.

## OPINION AND ORDER

SARGUS, District Judge.

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus petition pursuant to 28 U.S.C. § 2254 that he now seeks to abandon. This matter is before the court on petitioner's motion to seal documents, (doc. no. 97), respondent's memorandum in opposition, (doc. no. 99), and petitioner's reply, (doc. no. 100).

### I.

Due to an expressed wish on petitioner's part to abandon this habeas corpus action and waive all further appeals, as well as a history of inquiries into petitioner's competency during his state court criminal proceedings, this Court appointed three mental health experts to evaluate petitioner for the purpose of determining whether he is competent to abandon this habeas corpus action and waive all further appeals. The Court's expert, Dr. John Fabian, has concluded his evaluation and submitted his report to this Court, copies of which were provided to counsel for both respondent and petitioner on October 28, 2004. Dr. Fabian's report has not been filed or otherwise made a part of the record in this case. The Court directed the parties to submit briefs on whether Dr. Fabian's report should be made public record or filed under seal.

To that end, petitioner filed a motion on November 11, 2004 to seal Dr. Fabian's report, (doc. no. 97). In support of sealing the report, petitioner points out in the first instance that Dr. Fabian's report has not been filed or made a part of this record

and that, accordingly, the presumption of public access to judicial proceedings and documents does not yet apply. Citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir.2001), and *United States v. Gonzales,* 150 F.3d 1246, 1255 (10th Cir.1998), petitioner further argues that, even assuming the report is filed, the mere filing of a document does not necessarily make it a public record or judicial document. Petitioner goes on to argue that case law supports sealing Dr. Fabian's report at this time because petitioner seeks only partial closure of public access to judicial documents, Dr. Fabian's report represents just one view regarding petitioner's competency that may or may not be admitted as evidence or even considered, the report discusses traditionally private matters, and the report includes information about third persons who are not part of this litigation. Petitioner points out that traditionally, competency evaluations are not provided to the public and that only after the competency determination has been made might the public be able to establish a legitimate interest in full disclosure. Finally, petitioner argues that the public's access to the report at this time would not play a positive rule in the actual functioning of the process, since at least one more report, depositions, and a hearing are still to come.

Respondent argues that petitioner has not met the requirements for sealing Dr. Fabian's report. Respondent argues that there is a presumption of public access and that the standards for overcoming that presumption are onerous. Respondent argues that there are strong equitable factors in favor of openness in this case because it involved a particularly heinous murder for which petitioner has accepted responsibility and for which petitioner believes he deserves the ultimate sanction. Respondent reasons that there is little purpose in sealing records at this juncture, since there are not ongoing proceedings, such as a jury trial, to taint. Respondent points out that much of the private information contained in Dr. Fabian's report is already in the public record, and that the Court could, in the interests of protecting sensitive information or the privacy of third persons, seal only the provisions of the report relating to such matters. Finally, respondent argues that the costs of sealing the report would be high, insofar as the Court and litigants would be forced into tremendous uncertainty about what could and could not be said about information contained in the report, and that eventually, the entire report will come to light in any event.

## II.

■ Historically, there has been a presumption of openness and public access to judicial proceedings and documents. *Press–Enterprise Co. v. Superior Court of Cal. (Press–Enterprise II)*, 478 U.S. 1, 10, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *Press–Enterprise Co. v. Superior Court of Cal. (Press–Enterprise I)*, 464 U.S. 501, 507, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Addressing the presumption of access to judicial proceedings, in *Press–Enterprise II,* the Supreme Court held that there is a qualified right of public access to judicial proceedings, rooted in the First Amendment, if there is "a tradition of accessibility" to the nature of the proceedings involved and if public access "plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II,* 478 U.S. at 8–9, 106 S.Ct. 2735.

■ Beyond the First Amendment analysis, there exists a common law right of access to judicial proceedings and docu-

ments that does not rise to a constitutional dimension and is left to the sound discretion of the trial court. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Distinguishing between access to judicial proceedings and access to judicial documents, the Sixth Circuit has addressed whether there is a First Amendment right to inspect and copy judicial documents, or only a common law right of access. *Compare United States v. Beckham*, 789 F.2d 401, 406–409, 412–15 (6th Cir.1986)(holding that media members had no constitutional right of access to tapes), *with Application of National Broadcasting Company, Inc.*, 828 F.2d 340, 345 (6th Cir.1987)(holding that there is a qualified First Amendment right of access to proceedings and documents relating to disqualification of a judge in a criminal case and to conflicts of interest between attorneys in a criminal case).

 With respect to the common law right of access, a trial court's discretion is not unfettered and typically involves a fact-intensive and context-specific balancing of the competing interests of those who seek access and those who seek to deny it. *Nixon, supra,* 435 U.S. at 598–99, 98 S.Ct. 1306. The interests to be weighed include (1) the Court's supervisory powers over its own documents; (2) the benefit to the public from the incremental gain in knowledge that would result from access to the materials in question; (3) the degree of danger to the petitioner or other persons mentioned in the materials; (4) the possibility of improper motives on the part of the media; and (5) any special circumstances in the case. *Beckham,* 789 F.2d at 409. That said, there is a strong presumption in favor of access, *Nixon, supra,* 435 U.S. at 602, 98 S.Ct. 1306; *Brown & Williamson Tobacco Corp. v. Federal Trade Commission,* 710 F.2d 1165, 1179 (6th Cir.

1983), and any balancing of interests begins with that presumption in favor of access. In light of the presumption in favor of access, merely articulating rational justifications for denying access will not suffice; rather, a district court must set forth "substantial reasons" for denying access. *Beckham,* 789 F.2d at 413.

### III.

Because the Court is persuaded that a common law right of access exists with respect to the competency evaluation reports that have and will be submitted in this case, the Court need not reach the question of whether, or to what extent, there also exists a First Amendment right of access.

 The Court has supervisory power over its own documents and files, and has the power, if not the duty, to restrict access to those materials where they might be used improperly. *Nixon v. Warner Communications, supra,* 435 U.S. at 598, 98 S.Ct. 1306. Trial courts have the power to seal records when the interests of privacy outweigh the public's right to of access. *In re The Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470 (6th Cir.1983)(citing *Brown & Williamson Tobacco Corp., supra,* 710 F.2d at 1179). In terms of whether any interests justify the Court's exercise of its supervisory powers to deny access not only to Dr. Fabian's report, but also to any other competency reports that will be filed, it is true that mental evaluations and presentence investigation reports are traditionally kept from the public eye during pretrial and trial stages of the criminal proceeding. Presentence reports, which are similar in nature to mental evaluations, due to the sensitive and private information that they include, are traditionally kept under seal. *See, e.g., United States v. Corbitt,* 879 F.2d 224, 229 (7th Cir.1989)(holding that there

is no First Amendment right of access to presentence reports); R.C. § 2951.03(D)(providing that, under Ohio statute, presentence reports are not public record and are kept under seal). That said, this Court is aware of at least one court in Ohio that has held that psychiatric evaluations conducted to determine whether the defendant is competent to stand trial constituted public records under common law and R.C. § 149.43. *State v. Hall*, 141 Ohio App.3d 561, 567, 752 N.E.2d 318 (2001).

While there is some question about whether mental evaluations conducted for purposes of determining a defendant's competency should be kept under seal, with the exception of proposed budgets and motions for the appropriate of funds to employ experts filed in capital habeas corpus proceedings involving indigent petitioners, this Court knows of no tradition that habeas corpus proceedings are closed and that documents filed in such proceedings are sealed. In sum, this Court sees no need to exercise its supervisory powers to deny access to the competency reports that have been or will be submitted in this case.

On the other hand, there are benefits to the public from the incremental gain in knowledge that would result from access to the reports in question. In the context of the first amendment right of access, the Sixth Circuit has remarked that the "right of access is, in part, founded on the societal interests in public awareness of, and its understanding and confidence in, the judicial system." *Application of National Broadcasting Co., Inc.*, 828 F.2d 340, 345 (6th Cir.1987)(internal quotation marks and citations omitted). Against this backdrop, the Court notes as respondent noted that this case involves a particularly brutal murder for which petitioner has admitted responsibility and for which he has stated that he believes he deserves the ultimate punishment. The Supreme Court observed in *Press–Enterprise II*, 478 U.S. at 13, 106 S.Ct. 2735, that "Criminal acts, especially certain violent crimes, provoke public concern, outrage, and hostility." Further, since there are strong public interests not only in the prompt execution of state court criminal judgments, but also in the assurance that state court criminal judgments are constitutional, there is a corresponding interest in the public's access to, and understanding of, every stage of the appeals process to which capital defendants are entitled in order to test the constitutionality of their death sentences. Considerations of comity and federalism suggest that the public's interest in access to, and an understanding of, the appeals process is that much more significant with respect to habeas corpus proceedings, where the legitimacy of state court criminal convictions are challenged in federal courts.

Petitioner Ashworth has expressed a desire to abandon this habeas corpus action and waive all further appeals, essentially paving the way for the state to execute him without the ordinary delays that would be associated with pursuing every appeal available to him. The determination of whether he is competent to make this decision is critical to how quickly petitioner's execution will be carried out or even if it is to be carried out at all. This Court's decision as to petitioner's competency will be informed by many sources, not the least of which are the evaluations and recommendations made by the mental health experts whom this Court was so careful in selecting.

For these reasons, the Court is satisfied that there are notable benefits to be gained from public access to reports prepared by mental health experts regarding petitioner's competency. Further, the

Court is not persuaded that public access will have any negative impact on the process.

The Court finds unpersuasive petitioner's argument that the public's interest in access to these reports might attach only after the Court determines whether petitioner is competent to waive his appeals. This Court is of the view that the public and the process both benefit from contemporaneous access by the public to the records and proceedings that will inform the Court's determination. As the Sixth Circuit noted in holding that there was a right of public access to deportation hearings, "public access acts as a check on the actions of the Executive by assuring us that proceedings are conducted fairly and properly." *Detroit Free Press v. Ashcroft, et al.*, 303 F.3d 681, 703–704 (6th Cir.2002)(citing *Richmond Newspapers, supra*, 448 U.S. at 569, 100 S.Ct. 2814). The Sixth Circuit went on to remark that openness ensures that the government does its job properly and does not make mistakes, that open hearings have a cathartic effect, that openness enhances the perception of integrity and fairness, and that openness contributes to the proper functioning of our republican system of self-government by protecting free discussion of government affairs. *Detroit Free Press, supra*, 303 F.3d at 704. Although these interests were observed in the context of maintaining openness to deportation hearings, the Court finds them no less persuasive in support of maintaining access to the records upon which this Court will base its determination of whether Petitioner Ashworth is competent to abandon this habeas corpus action and waive all further appeals. The public has as much interest in the process as in the result, and contemporaneous, rather than after-the-fact, access to the process seems to promise more benefits than detriments.

As for petitioner's argument that openness would play a negative role in the process, petitioner has articulated no legitimate harm that might result. This Court's determination of petitioner's competency, and the extent to which the Court will rely on mental evaluations, will not be affected by the public's access to those reports. There is no logic to petitioner's argument that the public's interest in access to Dr. Fabian's report could be established only if the Court ultimately relies on the report; should the Court choose to give little or no weight to a competency evaluation conducted by a court-appointed mental health expert, the public's interest in access to that report would be no less than if the Court relied heavily on the report.

The Court must also consider whether public access to the reports in question would result in any harm or prejudice to petitioner or other third parties implicated by the reports. The interests that justify keeping documents such as mental evaluations and presentence reports under seal during pretrial and trial stages of criminal proceedings are less compelling in the context of habeas corpus proceedings. Most importantly, there is no potential jury pool to taint with information that both is sensitive and private in nature, and may be inadmissible at a trial. Further, with respect to the privacy interests of the defendant-petitioner, his family, and the victim, much of the information that is sensitive and private in the instant case is already a matter of public record, due to the numerous evaluations that Petitioner Ashworth underwent prior to his plea and death sentence. It also bears mentioning that none of the third parties who might be implicated by public access to the competency reports, *i.e.*, petitioner's relatives and friends, have objected to the release of the competency reports. *See Application of WFMJ Broadcasting Co.*, 566 F.Supp.

1036,1043 (N.D.Ohio 1983). Given the fact that much of the information in Dr. Fabian's report has already been made public, the Court's interest in full disclosure of information relevant to the determination of petitioner's competency to abandon this habeas corpus proceeding does not justify closure. That is, nothing about restricting or denying access to the report will enhance the degree of disclosure.

As for the possibility of improper motives on the part of the media, this Court has seen no such indication. In the absence of any indications of improper motives, "[c]onfidence in the responsibility of the media must prevail until reason is given to find otherwise." *Application of WFMJ Broadcasting Co., supra,* 566 F.Supp. at 1043. Thus, the Court sees no indication of the possibility of improper motives on the part of the press.

Any "special interests" that exist in this case militate in favor of granting public access to the competency reports in question. As noted above, this is a habeas corpus proceeding, not a criminal trial. Thus, there is no jury pool to taint with sensitive or private information that might or might not be admissible at a criminal trial. Overall, a litigant has less interest in privacy over such information during habeas corpus proceedings than the same litigant has during the pretrial and trial stages of his criminal proceedings. It also bears reminding that the press has not been heard on this matter; the Court would be loathe to deny public access to any materials in this case without first giving the press the opportunity to be heard. *Cf. In re The Knoxville News–Sentinel Co., Inc., supra,* 723 F.2d at 475. Since the party that wants to deny access bears the burden of showing that justice requires closure, *Application of WFMJ Broadcasting Co., supra,* 566 F.Supp. at 1043, the Court notes that while petitioner

may not have affirmatively sought publicity in this case, it was petitioner who put his competency at issue in the first place by abruptly changing course and announcing an intent to abandon this habeas corpus action.

Finally, petitioner has raised the argument that Dr. Fabian's report has not been filed with this Court, has not otherwise been made a part of the record in this case, and is not evidence at this time. Thus, petitioner reasons, the presumption in favor of public access does not apply to the report. The Court respectfully disagrees. That Dr. Fabian's report has not yet been filed is a mere formality. This Court elected, out of an abundance of caution, to solicit the parties' views about whether, or to what extent, the report should be made part of the record before directing the clerk to file it. That fact cannot be used an argument for why the report should never be filed or made a part of the record in this case.

## IV.

For the foregoing reasons, the Court concludes that the interests of permitting public access to the competency reports in this case far outweigh petitioner's interests in denying access. Petitioner's motion to seal Dr. Fabian's report is DENIED. The Clerk is DIRECTED to docket Dr. Fabian's report.