[Cite as *State v. Rohrer*, 2015-Ohio-5333.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 14CA3471 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| JOHN J. ROHRER, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 12/10/15** |

_____

<u>APPEARANCES:</u>

David L. Kastner, Beavercreek, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

McFarland, A.J.

**{¶ 1}** On January 25, 2010, the Ross County Court of Common Pleas found that Appellant, John J. Rohrer, had committed the offense of felonious assault. On that date, the trial court further found that Rohrer was not guilty by reason of insanity, pursuant to R.C. 2945.40. The trial court next proceeded to find Appellant was mentally ill and subject to hospitalization. Since that time, Appellant has been committed to the care of psychiatric hospitals.

{¶ 2} On August 22, 2014, the trial court overruled a motion filed by Appellant that argued the trial court had lost its jurisdiction as to Appellant by failing to comply with the requirements of R.C. 2456.40(B) when it conducted the original proceedings on January 25, 2010.  On September 12, September 15, and September 25, 2014, this matter came before the court upon Appellant's biannual review for continued commitment. The trial court issued its decisions as to continuing commitment and forced medication orders by separate entries journalized on November 3, 2014.

{¶ 3} On December 1, 2014, Appellant gave notice that he is appealing from the order entered on August 22, 2014, which he asserts became merged into two November 3, 2014 entries, each entitled "Decision & Order."  The two November 3, 2014 decisions and orders held: (1) that Appellant remained a mentally ill person subject to hospitalization in the least restrictive environment; and, (2) that the forced drugging order previously issued by the trial court should be terminated.

{¶ 4} On appeal, Appellant raises eight assignments of error. However, upon review of the trial court record and the relevant Ohio law, we find no merit to Appellant's arguments.  We overrule all assignments of error and affirm the judgment of the trial court.

FACTS

{¶ 5}  Appellant, John J. Rohrer, was indicted for a violation of R.C. 2903.11, felonious assault, a felony of the second degree, on September 18, 2009, by the Ross County Grand Jury.  The indictment stemmed from an incident occurring on September 1, 2009.  The record indicates Appellant appeared for arraignment on September 21, 2009 and entered a not guilty plea.  The case was assigned to Judge William Corzine.  On September 24, 2009, counsel from the Ohio Public Defender's Office filed a notice of appearance on Appellant's behalf.  On the same date, Counsel also entered a written plea of not guilty by reason of insanity (NGRI) and a motion for a competency examination of Appellant.  The trial court granted the motion.

{¶ 6}  The next pleading of record is dated January 14, 2010, when the trial court's entry assigned the matter for an evaluation hearing on January 22, 2010.  The record next reveals a written waiver of jury trial executed by Appellant and filed on January 25, 2010.  On February 1, 2010, the trial court filed an entry summarizing hearings involving Appellant which took place on January 25, 2010.  The entry memorializes the following events:

1.  That Appellant was present and represented by counsel;

2.  That the parties stipulated to the report of a board-certified forensic psychologist, Dr. Stinson, on the issue of Appellant's competency to stand trial;

3.  That based upon the competency report, Appellant was competent to stand trial;

4.  That Appellant had time to consult with counsel, was explained his constitutional rights, and waived his right to jury trial;

5.  That the matter proceeded to a trial by court wherein the parties stipulated to a police report of the September 1, 2009 incident, and also stipulated to the report of Dr. Stinson as to Appellant's mental condition at the time of the commission of the alleged offense on September 1, 2009;

6.  That based upon the stipulated matters, the trial court found Appellant knowingly caused physical harm to Warren Stevens by means of a deadly weapon;

7.  That further, the trial court found Appellant not guilty by reason of insanity;

8.  That by agreement of counsel, the matter then proceeded to a hearing pursuant to R.C. 2945.40;

9.  That the court explained to Appellant his rights as set forth in R.C. 2945.40(C);

10. That the parties stipulated to the report of Dr. Dennis Eshbaugh, a clinical and forensic psychologist, and that based upon the report, the trial court found by clear and convincing evidence that Appellant was a mentally ill person subject to hospitalization by court order;

11. That the least restrictive commitment alternative available, consistent with public safety and the welfare of Appellant, was the Timothy B. Moritz Forensic Center[1]; and,

---

[1] The complete name of this facility is Twin Valley Behavioral Healthcare, Timothy B. Moritz Unit, hereinafter "Twin Valley."

12. That the Appellant was committed to that facility, with the facility ordered to make reports to court as required by R.C. 2945. 401.

{¶ 7} The record reflects that at the time of his original commitment in 2010, Appellant was 29-years old, single, with no children. Appellant was born in Ohio, but had lived in California and Oklahoma during his childhood. His father was a college professor and his mother is an attorney. In the mid-1990's, Appellant relocated to the Chillicothe area. He graduated from high school in 1998. Appellant also earned an associate's degree from Ohio University. At the time of the incident which occurred in September 2009, Appellant was on a conditional release stemming from a 2006 NGRI finding in a burglary case.

{¶ 8} Appellant did not file an appeal of the February 1, 2010 entry. The next docket entry reveals that on September 13, 2010, the court held a continued commitment hearing, pursuant to R.C. 2945.401. Again, Appellant was represented by counsel. The parties stipulated to the report of Dr. Eshbaugh. Appellant also submitted a document he prepared. The trial court found that Appellant remained a mentally ill person subject to hospitalization by court order. The trial court ordered that Appellant remain committed to the Moritz Unit at Twin Valley. Appellant did not file a notice of appeal from this entry.

{¶ 9} The next judgment entry is dated March 14, 2011. The matter was before the court on a motion from Twin Valley seeking an order of the court to approve administration of psychotropic medications and laboratory work. Appellant was present with an attorney. The parties stipulated to the report of Dr. Hurst, a clinical officer, and Dr. Soehner, Appellant's treating psychiatrist. The court found Appellant remained a mentally ill person subject to hospitalization, and the least restrictive treatment alternative remained commitment to the facility. The trial court approved the application for the forced administration of psychotropic medications as needed. There was no appeal of this order.

{¶ 10} On September 17, 2012, the trial court filed an entry summarizing the continued commitment hearing held on September 10, 2012. On that date, Appellant was again accompanied by an attorney. The parties again stipulated to the report of Dr. Eshbaugh. No other evidence or testimony was offered. Based upon the report, the trial court found that Appellant remained a mentally ill person subject to hospitalization. However, the court found that the least restrictive treatment alternative available was commitment to Appalachia Behavioral Healthcare, hereinafter "ABH." On September 18, 2012, the trial court journalized a nunc pro tunc

entry, additionally ordering ABH to provide reports to the court as required by law. Appellant pursued no appeal from either of these entries.

{¶ 11} On or after December 4, 2013, Appellant began filing various motions including: (1) a motion to require transportation; (2) a motion to vacate forced drugging order of March 14, 2011, final termination of commitment and/or alternatively for order restraining ABH for continuing violations of patients' rights legislation; and, (3) a motion to vacate order for warrant of removal. On January 7, 2014, Judge Leonard Holzapfel, retired, was assigned by the Supreme Court of Ohio to hear Appellant's case. On January 21, 2014, Appellant's attorney of record filed a motion to withdraw which was granted shortly thereafter.

{¶ 12} Appellant continued filing various pleadings and motions which included a "Notice of Absence of Jurisdiction." Appellant also took issue with the state of the trial court record and filed various motions to correct the record and suspend proceedings until the trial court had ruled upon the jurisdictional question. On August 12, 2014, the State filed a memorandum concerning jurisdiction. On August 20, 2014, Appellant filed a response brief to the State's memorandum.

{¶ 13} On August 22, 2014, the trial court overruled Appellant's motion as to jurisdiction. On August 27, 2014, the trial court overruled

appellant's motion to suspend all proceedings. On August 29, 2014, an attorney on behalf of Appellant's counsel filed a motion requesting Judge Holzapfel to recuse himself from further involvement in the case. On September 8, 2013, Judge Holzapfel overruled the motion. On September 9, 2014, a notice of appearance of additional counsel for Appellant was filed.

**{¶ 14}** On September 12, September 15, and September 25, 2014 the trial court heard testimony from the parties regarding Appellant's continued commitment and the forced medication order. On November 3, 2014, the trial court issued its decision that Appellant continues to be mentally ill subject to hospitalization and that the least restrictive environment is ABH. By separate entry of the same date, the trial court terminated the forced medication order. Appellant filed several post-judgment motions. Additional facts, where relevant, will be set forth below. This timely appeal followed.

ASSIGNMENT OF ERROR ONE

"I. THE TRIAL JUDGE NO LONGER HAS SUBJECT MATTER JURISDICTION UNDER OHIO REV. CODE SEC. 2945.40 OR 2945.401 BECAUSE IN THE ORIGINAL 1/25/10 CONFINEMENT PROCEEDINGS APPELLANT WAS DENIED A HEARING WITHIN THE MEANING OF OHIO REV. CODE SEC. 2945.40(C) AND SUBSTANTIVE AND PROCEDURAL DUE PROCESS UNDER SPECIFIC PROVISIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, SUCH THAT APPELLANT SHOULD NOW BE RELEASED PURSUANT TO OHIO

REV. CODE SEC. 2945.40(B) AS HE SHOULD HAVE BEEN IN 2010."

{¶ 15} We begin by noting that Appellant has appealed from the August 22, 2014 entry (finding that the trial court fully complied with the requirements of R.C. 2945.40(B), and the November 3, 2014, entry (finding Appellant is a mentally ill person subject to hospitalization in the least restrictive environment.) Appellant's notice of appeal states that the entries are merged. Although the language of the entries does not reflect merger, Appellant is correct.[2] An entry holding that a court has jurisdiction is interlocutory and cannot be the basis of an appeal. See, *Federal Land Bank of Louisville v. DeRan,* 740 Ohio App. 365, 59 N.E.2d 54 (6th Dist. 1944). "[I]nterlocutory orders * * * are merged into the final judgment. Thus, an appeal from the final judgment includes all interlocutory orders merged with it * * *." (Citation omitted.) See, *USA Freight, LLC. v. CBS Outdoor Group, Inc.,* 2nd Dist. Montgomery No. 26425, 2015-Ohio-1474, ¶ 15. *Grover v. Bartsch,* 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 9 (2nd Dist.). An interlocutory order is "[a]n order that relates to some intermediate matter in the case; any order other than a final order." Black's Law

---

[2] Actually, there was a second November 3, 2014 entry. The second entry pertained to Appellant's motion to terminate forced medication. The first November 3, 2014 entry references the forced medication issue and states that it will be "[addressed] by separate entry." In that sense, the two November 2014 entries are merged. Although both November entries are referenced in the notice of appeal, Appellant does not challenge the court's ruling as to the termination of forced medication order.

Dictionary (10th Ed. 2014). Therefore, there is no issue regarding the finality and appealability of the order in this case.

{¶ 16} We next pause to emphasize App.R. 16(A)(7) which requires Appellant to prepare a brief containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." At the outset, Appellant has directed us to his July 2014 pretrial statement for a full argument regarding the issues. However, it is not our responsibility to "hunt through" the record. *King v. King,* 4th Dist. Washington No 13CA7, 2014-Ohio-5836, ¶ 35, quoting *State v. Allen,* 4th Dist. Scioto No. 96CA2421, 1997 WL 691470, *6, fn. 12 (Nov. 7, 1997). "The provisions of App.R. 16(A)(7) for fully briefing each assignment of error place this responsibility squarely on appellant." *Id.* Therefore, we consider Appellant's eight assignments of error based on the arguments summarily argued in his brief.

{¶ 17} Finally, before we begin our analysis, we pause to set forth the relevant statutes and definitions, as well as case law which recognize the interplay between Chapters 2945 and 5122. The procedure for the determination of the appropriate disposition of a person who has been acquitted of a criminal charge by reason of insanity is governed by R.C.

2945.40. *State v. Johnson,* 5th Dist. Stark No. 2012 CA00231, 2013-Ohio-3691, ¶ 10; *State v. Thomas*, 4th Dist. Lawrence No. 92CA32, 1993 WL 293636, *3. Specifically, R.C. 2945.40, acquittal by reason of insanity, provides:

> (A) If a person is found not guilty by reason of insanity, the verdict shall state that finding, and the trial court shall conduct a full hearing to determine whether the person is a mentally ill person subject to court order or a mentally retarded person subject to institutionalization by court order.
>
> * * *
>
> (B) The court shall hold the hearing under division (A) of this section to determine whether the person found not guilty by reason of insanity is a mentally ill person subject to court order or a mentally retarded person subject to institutionalization by court order within ten court days after the finding of not guilty by reason of insanity.
>
> * * *
>
> (C) If a person is found not guilty by reason of insanity, the person has the right to attend all hearings conducted pursuant to sections 2945.37 to 2945.402 of the Revised Code. At any hearing conducted pursuant to one of those sections, the court shall inform the person that the person has all of the following rights:
>
> (1) The right to be represented by counsel and to have that counsel provided at public expense if the person is indigent, with the counsel to be appointed by the court under Chapter 120. of the Revised Code or under the authority recognized in division (C) of section 120.06, division (E) of section 120.16, division (E) of section 120.26, or section 2941.51 of the Revised Code;

(2) The right to have independent expert evaluation and to have that independent expert evaluation provided at public expense if the person is indigent;

(3) The right to subpoena witnesses and documents, to present evidence on the person's behalf, and to cross-examine witnesses against the person;

(4) The right to testify in the person's own behalf and to not be compelled to testify;

(5) The right to have copies of any relevant medical or mental health document in the custody of the state or of any place of commitment other than a document for which the court finds that the release to the person of information contained in the document would create a substantial risk of harm to any person.

D) The hearing under division (A) of this section shall be open to the public, and the court shall conduct the hearing in accordance with the Rules of Civil Procedure. The court shall make and maintain a full transcript and record of the hearing proceedings. The court may consider all relevant evidence, including, but not limited to, any relevant psychiatric, psychological, or medical testimony or reports, the acts constituting the offense in relation to which the person was found not guilty by reason of insanity, and any history of the person that is relevant to the person's ability to conform to the law.

* * *

(F) If, at the hearing under division (A) of this section, the court finds by clear and convincing evidence that the person is a mentally ill person subject to court order, the court shall commit the person either to the department of mental health and addiction services for treatment in a hospital, facility, or agency as determined clinically appropriate by the department of mental health and addiction services or to another medical or psychiatric facility, as appropriate.

{¶ 18} R.C. 5122.011 states:

"The provisions of this chapter regarding hospitalization apply to a person who is found incompetent to stand trial or not guilty by reason of insanity and is committed pursuant to section 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code to the extent that the provisions are not in conflict with any provision of sections 2945.37 to 2945.402 of the Revised Code. If a provision of this chapter is in conflict with a provision in sections 2945.37 to 2945.402 of the Revised Code regarding a person who has been so committed, the provision in sections 2945.37 to 2945.402 of the Revised Code shall control regarding that person."

{¶ 19} The Ohio Supreme Court has made clear that involuntary-commitment proceedings are civil in nature. *State v. Jackson*, 1st Dist. Hamilton No. C-130420, 2014-Ohio-613, 9. See, *State v. Williams,* 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 37 (incompetency commitments under R.C. 2945.39 and recommitments under R.C. 2945.401 are civil in nature); see, also, *State v. Tuomala,* 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, ¶ 16 (a determination under R.C. 2945.40 that a criminal defendant was insane at the time of the alleged acts is an acquittal, not a conviction). In *Jackson, supra*, the appellate court found while Jackson's involvement with the court was initiated by a criminal indictment, the case ceased to be a criminal matter once he was acquitted of the charges by reason of insanity.

A. STANDARD OF REVIEW

{¶ 20} The right to procedural due process is protected by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Hudson*, 2013. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6. Individuals in Ohio committed to mental institutions are protected both by the due process clauses of the U.S. and Ohio Constitutions and by statute under Chapter 5122.[3] *State v. Pollock,* 2nd Dist. Greene No. 2001-CA-32, 2002-Ohio-102, ¶ 9; *In re Fisher* (1974), 39 Ohio St.2d 71, 313 N.E.2d 851; *State v. Thomas* (Aug. 20, 1985), Lawrence App. No. 1742, unreported.

{¶ 21} The involuntary commitment of an individual constitutes a significant deprivation of liberty. *In re Kister,* 194 Ohio App.3d 270, 2011-Ohio-2678, 955 N.E.2d 1029 (4th Dist.), ¶ 22, citing, See *Addington v. Texas* (1979), 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323; *In re Miller* (1992), 63 Ohio St.3d 99, 101, 585 N.E.2d 396. Thus, "it is particularly important that the statutory scheme be followed, so that the [individual's] due-process rights receive adequate protection." *Miller* at 101, 585 N.E.2d 396. In applying the statutory scheme, "the individual's right against involuntary confinement depriving him or her of liberty must be balanced against the state's interest in committing those who are mentally

---

[3] 5122.42, preservation of rights and privileges, provides: "Nothing in this chapter limits any rights, privileges, or immunities under the constitution, and laws of the United States or this state."

ill" and who pose a continuing risk to society or to themselves. *Id.* In *State*

*ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 125, 1994-Ohio-81, 630

N.E.2d 696, the Ohio Supreme Court addressed due process rights as

follows:

> "The Fourteenth Amendment forbids a state to 'deprive any person of life, liberty, or property, without due process of law * * *.' Hence, the Due Process Clause applies 'only if a government action will constitute the impairment of some individual's life, liberty, or property.' "2 Rotunda & Nowak, Treatise on Constitutional Law (1992) 580, Section 17.2. Woodson, supra at 25.

{¶ 22} Although due process is " 'flexible and calls for such

procedural protections as the particular situation demands,' " *Mathews v.*

*Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting

*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484

(1972), the basic requirements of procedural due process are notice and an

opportunity to be heard. *Hayden,* 96 Ohio St.3d 211, 2002-Ohio-4169, 773

N.E.2d 502, at ¶ 6, citing *State v. Hochhausler,* 76 Ohio St.3d 455, 459, 668

N.E.2d 457 (1996).

## B. LEGAL ANALYSIS

{¶ 23} Appellant argues that at his January 25, 2010 hearing

pursuant to R.C. 2945.40(A), the constitutional and statutory rights of due process were not afforded him.[4]  Appellant directs us to the "full inventory of such rights violations" contained in his pretrial statement of July 30, 2014, and incorporated by reference.  In his brief, Appellant specifically, contends:

> 1. He was never provided with written or oral notice of the State's intent to involuntarily hospitalize him.  He was also never informed that the State had to prove each of the elements of R.C. 5122.01(A) and (B) by clear and convincing evidence;
>
> 2. He was never given a meaningful opportunity to be heard;
>
> 3. An actual evidentiary hearing never took place;
>
> 4. He was deprived of a meaningful opportunity to call witnesses on his own behalf;
>
> 5. The right to cross-examine witnesses was never read. Appellant was not informed of his right to exclude privileged, confidential information.  Neither Appellant nor his counsel waived his right to confront or to cross-examine Dr. Eshbaugh or his report;
>
> 6. Appellant was rendered ineffective assistance of counsel in that his counsel refused to meet with him, investigate his claims, rendered no assistance, and did nothing but serve as a bystander; (here again, Appellant references his pretrial statement and advises us to incorporate his argument.)
>
> 7. Appellant was never advised of his right to jury trial and his right to waive jury trial under the Ohio and federal

---

[4] Appellant directs us to the "full inventory of such rights violations contained in his pretrial statement of July 30, 2014, and incorporated by reference.  As indicated above, we will consider only Appellant's arguments made in the brief herein.

constitutions. (Appellant references his July 15, 2014 jury demand for the full argument).

Appellant concludes he has been unlawfully confined for over five years and must now be discharged.

{¶ 24} Appellee responds that the original February 1, 2010 entry finding Appellant not guilty by reason of insanity (NGRI) and mentally ill subject to hospitalization was a final appealable order. However, no appeal or attempt to file a delayed appeal was made nor did Appellant challenge the subsequent orders of the trial court until December 2013. Appellee contends that the doctrine of res judicata applies to bar the current appeal. However, Appellee further argues that, should this court disagree that res judicata applies, the trial court did comply with all Appellant's fundamental and statutory rights of due process.

{¶ 25} Our research has not yielded any Ohio cases specifically challenging the trial court's exercise of jurisdiction in proceedings wherein an Appellant is acquitted by reason of insanity. The cases generally present challenges to the trial court's finding that an individual is mentally ill and subject to hospitalization, as we will address later herein. In fact, a NGRI finding has been held to be not final or appealable. In *State v. Janney,* 55 Ohio App.2d 257, 259, 380 N.E.2d 753, (10th Dist. 1977), the appellate court cited *State v. Chamberlain* (1964), 177 Ohio St. 104, at 105, 202

N.E.2d 695; *Berman v. United States* (1937), 302 U.S. 211, at 212, 58 S.Ct. 164, 82 L.Ed. 204, for the principle that a final judgment in a criminal case means sentence. The *Janney* court reasoned, therefore, that a finding of not guilty by reason of insanity was not a final judgment or order appealable to that court. And, *Janney* held that appellant's remedy was to petition for a writ of habeas corpus as provided in the relevant statute. The *Janney* court concluded it did not have jurisdiction to hear the appeal.[5]

{¶ 26} Due to the various constitutional violations alleged, Appellant concludes that he must be completely discharged, which would be the remedy to be obtained through a writ of habeas corpus.[6] A writ of habeas corpus is an extraordinary writ which will lie only when an individual is without an adequate remedy at law. *Woodson v. Mohr,* 4th Dist. Ross No. 01CA2643, 2002-Ohio-3706, ¶ 15. (internal citations omitted.) Generally, a writ of habeas corpus will issue only when the petition successfully attacks the jurisdiction of the sentencing court. *Woodson, supra,* at ¶ 23. See *State*

---

[5] R.C. 5122.30, writ of habeas corpus, provides: "Any person detained pursuant to this chapter or section 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code shall be entitled to the writ of habeas corpus upon proper petition by self or by a friend to any court generally empowered to issue the writ of habeas corpus in the county in which the person is detained.

No person may bring a petition for a writ of habeas corpus that alleges that a person involuntarily detained pursuant to this chapter no longer is a mentally ill person subject to court order unless the person shows that the release procedures of division (H) of section 5122.15 of the Revised Code are inadequate or unavailable."

[6] We are aware Appellant filed a writ for habeas corpus in the Supreme Court of Ohio which was denied on the pleadings on July 23, 2014 by the Court's decision in *State ex rel. Rohrer v. Holzapfel,* 139 Ohio St.3d 1481, 2014-Ohio-3195, 112 N.E.3d 1227.

*ex rel. Jackson v. McFaul,* 73 Ohio St.3d 185, 187, 1995-Ohio-746, 652

N.E.2d at 748 (citing R.C. 2725.05).

{¶ 27} By contrast, this court considered the arguments of a

defendant found not guilty by reason of insanity in *State v. Wachtel*, 4th

Dist. Athens No. 99CA24, 2000 WL 1038112. Wachtel was found NGRI in

May 1998. In November 1998, the trial court held a hearing and determined

Wachtel's commitment should be continued. On April 30, 1999, Wachtel

filed a motion for reconsideration of various motions to vacate his plea of

NGRI. The trial court denied his motion. On appeal, Wachtel claimed

various due process and equal protection violations. Included within his

argument, Wachtel asserted the trial court did not have jurisdiction to find

him NGRI because it did not comply with R.C. 2945.05.[7] This court

construed Wachtel's filing in this court as a petition for post-conviction

relief, although it was not entitled as such. We held:

> "Because we find that Wachtel was seeking post-conviction
> relief even though he was not convicted, and because Wachtel
> attempts to substitute motions seeking vacation and
> reconsideration for a direct appeal, we find no error in the trial
> court's denial of Wachtel's motions." *1.[8]

---

[7] This code section pertains to the subpoenaing of witnesses.

[8] Post-conviction relief is governed by R.C. 2953.21. The statute provides, in pertinent part, that:
"Any person who has been convicted of a criminal offense * * * and who claims that there was
such a denial or infringement of the person's rights as to render the judgment void or voidable
under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in
the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to
vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner

**{¶ 28}** We further concluded:

> "Even if Wachtel was entitled to seek PCR, the matters that he
> seeks to appeal are res judicata. Wachtel did not file an appeal
> from the trial court's decision that found him NGRI.  Because
> Wachtel did not appeal the trial court's finding that he was
> NGRI, all matters that could have been reviewed had an appeal
> been taken are now res judicata and are not appealable. See e.g.,
> In re Adoption of Greer (1994), 70 Ohio St.3d 293, 638 N.E.2d
> 999, fn. 1."

Appellant's brief is replete with unsupported allegations of improper ex

parte communication, "pre-arranged off-record" discussions, the appearance

of impropriety, "questionable impartiality of the decisionmaker,"  "sham

proceedings," and ineffective assistance.  Such issues are to be raised in

post-conviction petitions. *State v. Banks,* 10th Dist. Franklin No. 12AP-96,

2012-Ohio-3770, ¶ 7**.**  However, construing Appellant's appeal at this late

date as an attempt for post-conviction relief, as cited above, it is not a

remedy available to him because as in *Wachtel,* Appellant here was not

convicted.

**{¶ 29}** More importantly, we agree, as in *Wachtel,* that Appellant's

Appellant's arguments are long since barred by the doctrine of res judicata.

Not until December 2013 did Appellant begin filing various motions in the

---

may file a supporting affidavit and other documentary evidence in support of the claim for relief.
R.C. 2953.21(A)(1)(a)."

trial court protesting irregularity in the commitment procedures followed by the trial court in 2010.  By that time it was too late to file any direct appeal.

{¶ 30}  In order to render this decision, we have completely reviewed the record on appeal.  Even if the doctrine of res judicata did not apply, the trial court's August 22, 2014 ruling is supported by the record.  Although we need go no further, in the interests of justice, we observe that the transcript of the January 25, 2010 hearing reveals that the trial judge fully complied with the requirements of R.C. 2945.40(B).

{¶ 31}  The January 2010 proceedings began with a stipulation as to Appellant's competency to stand trial, to understand the nature and objectives of the proceedings against him, and the ability to assist in his own defense.  The trial court next engaged in a colloquy with Appellant regarding his right to trial by jury and associated rights.  Appellant fully participated, explaining his educational background and the medications he used for his mental condition.  Appellant stated he felt able to make decisions and that he was reasonably "clear-headed."  Appellant answered affirmatively that he understood everything that had been discussed to that point.

{¶ 32}  The trial court next explained Appellant's rights to trial by jury, that all elements of his criminal charge had to be proven beyond a reasonable doubt, and the maximum penalties involved.  Appellant answered

affirmatively that he had the opportunity to discuss with his counsel his waiving of his right to jury trial. Appellant again answered affirmatively that he voluntarily waived and relinquished his right to a jury trial, and he executed a written waiver. The trial court next stated "By agreement of counsel" that the parties were ready to proceed with the R.C. 2945.40(B) hearing. He again advised Appellant of his right to counsel, the right to have an independent expert evaluation, the right to testify, and the right to copies of relevant medical documents. The court then recessed to review Dr. Eshbaugh's report. At the end of the recess, when both parties had opportunity to review the report, Appellant's counsel declined an opportunity to present other evidence or testimony and stipulated to Dr. Eshbaugh's report. The trial court found by clear and convincing evidence based upon the stipulated report of Dr. Eshbaugh that Appellant was mentally ill and subject to hospitalization. Before the hearing was concluded, the trial court inquired of both parties if there was anything further. By virtue of the record reflecting Appellant's indictment, notice of appearance of counsel in September 2009, various pleadings filed on behalf of Appellant, and his appearance in court with counsel at the January 2010 proceedings, we conclude Appellant had notice of the proceedings. We further conclude that after the dialogue between Appellant and the trial court

at the January 25, 2010 proceedings, although it was brief, Appellant had an opportunity to be heard.

{¶ 33}  In *State v. Pollock*, 2nd Dist. Greene No. 2001-CA-32, 2002-Ohio-102, the defendant argued that the trial court failed to follow the 10-day time limitation for holding the commitment hearing set forth in R.C. 2945.40(B) and concluded, therefore, he was entitled to a writ of habeas corpus.  The appellate court set forth the statute and noted it did not specifically address the issue raised.  The appellate court held that while it had found no cases directly on point, Ohio Supreme Court precedent and public policy considerations lead to the determination that the failure to conduct the hearing within the time limits did not deprive the trial court of jurisdiction to order the commitment.  The appellate court further observed that Pollock had not demonstrated any manner in which he had been prejudiced by the untimely hearing.  We conclude, as in *Pollock*, that despite Appellant's sweeping and unsubstantiated allegations of vast impropriety of the proceedings, he has not demonstrated that he was prejudiced by the manner in which the R.C. 2945.40(B) initial commitment hearing in January 2010 was conducted.

{¶ 34}  For the foregoing reasons, we find no merit to Appellant's first assignment of error.  Appellant's argument that the trial court committed

various due process violations and as a result lost its jurisdiction, first raised

after December 2013, is barred by the doctrine of res judicata.  As such, we

overrule the first assignment of error and affirm the judgment of the trial

court.

ASSIGNMENT OF ERROR TWO

"II.  THE TRIAL JUDGE ERRED BY REFUSING TO FIND THAT
HE LACKED SUBJECT MATTER JURISDICTION UNDER OHIO
REV. CODE SEC. 2945.40 OR 2945.401 TO ISSUE ANY ORDERS
OF INVOLUNTARY TREATMENT BECAUSE THE 2011
ENACTMENT OF SEC.1.21 OF THE OHIO CONSTITUTION
PROHIBITS FORCED TREATMENT."

A.  STANDARD OF REVIEW

{¶ 35}  The common law doctrine of "informed consent" has been

viewed as generally encompassing the right of a competent adult to refuse

medical treatment, *In re S. H. 2013*, 9th Dist. Medina No. 13CA0066-M,

2013-Ohio-4380,  ¶ 10, quoting *Cruzan v. Director, Miss. Dept. of Health,*

497 U.S. 261, 277, 110 S.Ct. 2841, (1990). "The right to be free from

unwanted medical attention is a right to evaluate the potential benefit of

treatment and its possible consequences according to one's own values and

to make a personal decision whether to subject oneself to the intrusion."

*Cruzan,* 497 U.S. 261, 309, 110 S.Ct. 2841, (Brennan, dissenting).  In

*Cruzan,* the Court found the right of a competent adult to refuse unwanted

medical treatment to be a constitutionally protected liberty interest under the

due process clause of the Fourteenth Amendment.  This constitutionally protected right to refuse unwanted medical treatment has been recognized in Ohio.

{¶ 36}  The Supreme Court of Ohio recognizes an Ohioan's fundamental right to refuse medical treatment on the basis that "personal security, bodily integrity, and autonomy are cherished liberties." *Steele v. Hamilton Cty. Community Mental Health Bd.,* 90 Ohio St.3d 176, 736 N.E.2d 10, 2000-Ohio-47 at 180, 736 N.E.2d 10.  "These liberties were not created by statute or case law.  Rather, they are rights inherent in every individual." *Id.* at 180-81, 736 N.E.2d 10 (citing Section 1, Article I, Ohio Constitution).  The court has further held that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body." *Id.* at 181, 736 N.E.2d 10 (quoting *Schloendorff v. Soc. of N.Y. Hosp.* (1914), 211 N.Y. 125, 105 N.E. 92, 93). *Licking & Knox Community Mental Health & Recovery Bd. v. T.B.,* 10th Dist. Franklin No. 10AP-454, 2010-Ohio-3487, ¶ 19.  A competent person may refuse medical treatment regardless of the fact that there may be severe consequences involved for refusing treatment. *Cruzan,* 497 U.S. 261, 306, 110 S.Ct. 2841, 111 L.Ed.2d 224 (Brennan, dissenting).  That the state may disagree with a competent individual's decision to forego medical treatment is of no consequence,

"[t]he regulation of constitutionally protected decisions * * * must be predicated on legitimate state concerns other than disagreement with the choice the individual has made * * *. Otherwise the interest in liberty would be a nullity * * *." (emphasis sic.) *Cruzan,* 497 U.S. 261, 313-314, 110 S.Ct. 2841, 111 L.Ed.2d 224 (Brennan, dissenting) ( quoting *Hodgson v. Minnesota,* 497 U.S. 417, 435, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990).

## B. LEGAL ANALYSIS

**{¶ 37}** An individual who is found not guilty by reason of insanity and committed pursuant to R.C. 2945.40 remains subject to the jurisdiction of the court until: (1) the individual is no longer mentally ill and subject to hospitalization as determined by the trial court; (2) the maximum prison sentence that could have been imposed for the most serious offense with which the individual was charged expires; or (3) the individual becomes competent to stand trial. R.C. 2945.401(J)(1). See also, R.C. 2945.401(A); *Townsend v. McAvoy,*12 Ohio St.3d 314, 315, 466 N.E.2d 555 (1984). As set forth above, Appellant was originally found NGRI on January 25, 2010. Per our resolution of Assignment of Error One, Appellant remains subject to the jurisdiction of the trial court.

**{¶ 38}** On December 9, 2011, the Ohio legislature enacted Section 1.21 of the Ohio Constitution. Section 1.21, "preservation of the freedom to

choose health care and health care coverage," states: "(A) No federal, state, or local law or rule shall compel, directly or indirectly, any person * * * to participate in a health care system."  Appellant  argues that this constitutional provision prohibits forced treatment, be it hospitalization or "drugging."  As such, Appellant contends he has the right not to be forced to participate in any manner in "medical treatment" without informed consent.

{¶ 39}  Appellee counters Appellant's argument that the constitutional provision prohibits forced medical treatment by directing us to Section (D) of the same provision.  Section 1.21 further provides:

> "(D) This section does not affect laws or rules in effect as of March 19, 2010; affect which services a health care provider or hospital is required to perform or provide * * *."

{¶ 40}  As relates to Appellant's contention about "forced drugging," that issue has become moot.  The trial court determined in its separate entry of November 3, 2014 that:

> "From the testimony presented on behalf of defendant and defendant's own testimony the court finds, although the defendant is a mentally ill person subject to hospitalization, has the mental capacity to participate in his medical treatment. However defendant cannot refuse treatment deemed advisable by his treating physician. * * * It is therefore ordered that the forced drugging order previously issued by this court is terminated."

As such, we have no need to consider whether the constitutional amendment prohibits unwanted medical treatment in the context of court-ordered medications.

{¶ 41} Pertaining to Appellant's argument that his hospitalization is prohibited by the constitutional amendment, we reiterate that pursuant to *Cruzan* and *Steele,* a competent adult has the fundamental right to refuse unwanted medical treatment. Black's Law Dictionary defines "competent" as follows:

> "Duly qualified; answering all requirements; having sufficient capacity, ability or authority; possessing the requisite physical mental, natural or legal qualifications; able, adequate; suitable; sufficient; capable; legally fit." *Id.* Abridged Sixth Edition, 1991.

Our research has revealed no Ohio cases in which this constitutional amendment was used as a justification to avoid the jurisdiction of the committing court. The trial court found that Appellant had the "mental capacity to participate in his medical treatment, while finding he remains mentally ill subject to hospitalization. We conclude, therefore, in this sense, Appellant is not "sufficiently competent" to have the fundamental right to refuse hospitalization.

{¶ 42} We further agree with Appellee that the constitutional amendment is not applicable to this case. The plain language of Section

1.21 states that it does not affect "services a health care provider or hospital is required to perform." Appellant is currently residing at ABH, which is a psychiatric hospital. He is, thus, an involuntary admission pursuant to judicial procedure as provided for in R.C. 5122.05(A)(2).

{¶ 43} R.C. 5122.01(F) defines "hospital" as "a hospital or inpatient unit licensed by the department of mental health and addiction services under section 5119.33 of the Revised Code, and any institution, hospital, or other place established, controlled, or supervised by the department under Chapter 5119. of the Revised Code." "Mental health services" is defined as "services for the assessment, care, or treatment of persons who have a mental illness as defined in this section."

{¶ 44} The pertinent definitions have been set forth above. ABH is required to provide mental health services, i.e. "hospitalization" to Appellant by virtue of his commitment pursuant to R.C. 2945.40 and R.C. 2945.401. We find no merit to Appellant's argument that Section 1.21 of the Ohio Constitution prohibits forced treatment or, with its enactment, deprived the trial court of jurisdiction in this matter. As such, it is hereby overruled.

## ASSIGNMENT OF ERROR SEVEN

{¶ 45} For ease of analysis, we will consider Appellant's seventh assignment of error out of order.

"VII.  THE TRIAL JUDGE ERRONEOUSLY ADMITTED OVER OBJECTION, OPINION TESTIMONY FROM STATE WITNESSES BASED ON THEIR INTERPRETATIONS OF CONFIDENTIAL PATIENT TREATMENT RECORDS DURING THE SEPTEMBER, 2012 (sic) PROCEEDINGS."

### A.  STANDARD OF REVIEW

{¶ 46}  "The trial court has broad discretion in the admission and exclusion of evidence * * *." *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 20, quoting *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67.  "Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.  The Supreme Court of Ohio has defined "abuse of discretion" as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *Kirkland* at ¶ 67, quoting *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

### B.  LEGAL ANALYSIS

{¶ 47}  R.C. 5122.31, confidentiality, provides:

"(A) All certificates, applications, records, and reports made for the purpose of this chapter and sections 2945.38, 2945.39, 2945.40, 2945.401, and 2945.402 of the Revised Code, other than court journal entries or court docket entries, and directly or indirectly identifying a patient or former patient or person whose hospitalization or commitment has been sought under

this chapter, shall be kept confidential and shall not be disclosed by any person except:

 * * *

(4) Pursuant to a court order signed by a judge.

(12) That records pertaining to the patient's diagnosis, course of treatment, treatment needs, and prognosis shall be disclosed and released to the appropriate prosecuting attorney if the patient was committed pursuant to section 2945.38, 2945.39, 2945.40, 2945.401, or 2945.402 of the Revised Code, or to the attorney designated by the board for proceedings pursuant to involuntary commitment under this chapter."

{¶ 48} We begin by noting Appellant's argument under this assignment of error does not specify any particular witness or any particular records or reports as being objectionable. Appellant argues "the ABH witnesses" unlawfully disclosed confidential patient information without his consent. Appellant argues since essentially all of the State's testimony was based on "confidential psychiatric records," the testimony should all be stricken.

{¶ 49} Appellee responds that the ABH records relied on by its experts were not protected by physician/patient privilege. Appellee points out Appellant's commitment proceeding was pursuant to R.C. 2945.401, not R.C. 5122.01. Appellee contends Appellant waived his right to privilege by pleading NGRI. Appellee directs us to *State v. Hall,* 141 Ohio App.3d 561, 752 N.E.2d 318 (4th Dist. 1991).

{¶ 50} At the September 2014 hearings, Dr. Scott testified she reviewed Appellant's "morning reports" which outlined "what a patient is going through on a daily basis." She testified the reports were conducted in the course of daily business at ABH. She acknowledged some of the reports were done prior to Appellant's hospitalization at ABH. She obtained the reports from his medical record and forensic files. Dr. Scott testified the reports are placed in Appellant's record as part of the duties of the employees of ABH who daily generate the reports.

{¶ 51} Dr. Scott also testified as to State's Exhibit A, which was a report she generated. Dr. Scott testified it was an accurate copy of her original report. She testified that page one of her report listed the documents she reviewed in order to conduct her evaluation for purposes of the continued commitment hearing. At this point, Appellant's counsel objected to the report's admissibility, in part, because: (1) it was a summary report based on records not made available before trial; and, (2) the report was based on hearsay. The State responded, in part, that the records Dr. Scott reviewed in making her determination were kept by ABH in the course of their record-keeping process. Counsel responded that the reports contained confidential information which Appellant had not waived. At this point, the trial court overruled the objection.

**{¶ 52}** In *State v. Hall,* we noted:

"Ohio's Public Records Act also requires that 'public records' be made available for inspection. R.C. 149.43(B)(1). It is well settled that any document pertaining to a court proceeding, or any record necessary to the execution of the responsibilities of a governmental unit, is a 'public record' within the meaning of R.C. 149.43. Such record must be made available for public inspection unless there is a specific statutory exclusion which applies. *State ex rel. Mothers Against Drunk Drivers v. Gosser* (1985), 20 Ohio St.3d 30, 20 OBR 279, 485 N.E.2d 706, at paragraph one of the syllabus; *Potchen v. Kelly* (1998), 130 Ohio App.3d 21, 26, 719 N.E.2d 570, 573; *State ex rel. Swigart v. Barber* (1997), 118 Ohio App.3d 238, 240, 692 N.E.2d 639, 640." *Id.* at 1-2.

**{¶ 53}** In *Hall*, we concluded:

"We believe that the psychiatric evaluations at issue in the instant case are judicial records or documents submitted to the court to assist it in its responsibility to determine whether appellant is competent to stand trial. As such, the evaluations are 'public records' that must remain open to inspection, under both common law and R.C. 149.43, unless appellant can show some authority to the contrary." *Id.* at 3.

**{¶ 54}** Hall argued his psychiatric evaluations should have been exempted from the Public Records Act because they were "medical records." However, we stated:

"It is true that 'medical records' are excluded from the rubric of 'public records' that must remain open for inspection. R.C. 149.43(A)(1)(a). However, 'medical records' are defined for purposes of this statute as documents that are 'generated and maintained in the process of medical treatment.' *Id.* at (A)(3). Medical reports compiled for reasons other than 'medical treatment' do not fall within this exception. See, e.g., *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141,

144-145, 647 N.E.2d 1374, 1379; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 214, 611 N.E.2d 838, 846.  As the trial court aptly noted below, the psychiatric reports at issue in this case were not generated as a part of appellant's 'medical treatment.'  The reports at issue were compiled solely to assist the court in determining whether appellant was competent to stand trial. Thus, those reports are not 'medical reports' exempt from public disclosure requirements." *Id.* at 4-5.

{¶ 55}  Further, in *Hall*, the appellant also cited R.C. 2317.02(B)(1)

"physician-patient privilege" and suggested the provision required that his

psychiatric evaluations be sealed.  Again, this court disagreed, reasoning as

follows:

"R.C. 2317.02(B)(1) states, inter alia, that a physician shall not testify as to any communication made by a patient to the physician in the course of that relationship.  This is a testimonial privilege and has no bearing in those instances such as the instant case in which a court must consider whether to make available to the public a report already prepared by a psychiatrist.  Moreover, the physician-patient privilege attaches only when a person consults a doctor for treatment or diagnosis and does not extend to the situation when the doctor is hired to render an opinion for purposes of litigation. See, e.g., *State v. Fears* (1999), 86 Ohio St.3d 329, 343, 715 N.E.2d 136, 150; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 552-553, 679 N.E.2d 321, 341-342.  In the case sub judice, the doctors prepared the evaluations for purposes of determining appellant's competency to stand trial.  Those evaluations were not prepared in the course of a traditional physician-patient relationship ( i.e., when treatment is being sought and provided) and, hence, these evaluations are not privileged under R.C. 2317.02(B)(1)." *Id.* at 7.

{¶ 56} In *Hall,* we held that even assuming, arguendo, the statute applied, we would still find no violation of its provisions because "a number of exceptions are made to the confidentiality requirements of R.C. 5122.31." The same is true here. It appears that R.C. 5122.01(A)(4) and (12) both clearly address the situation where psychiatric records are used for an initial or continued commitment hearing.

{¶ 57} Dr. Scott performed an evaluation of Appellant's medications in order to prepare a report for the continued commitment proceedings and in the course of doing so, reviewed Appellant's medical records. She testified these records were kept in the course of ABH's daily business activities. In fact, Dr. Janson, Appellant's own expert, also testified he reviewed Appellant's records available up to September 2013, specifying review of ABH's files, clinical notes, psychological reports prior to September 2013, and Dr. Scott's report. As in *Hall,* we believe the medical reports were compiled for reasons other than medical treatment. The psychiatric reports were generated for purposes of the continued commitment proceedings. See also *State v. Santana* (psychiatric reports are relevant admissible evidence.)

{¶ 58} Both doctors utilized the same medical records and reports to form their opinions. As such, we find the trial court did not abuse its

discretion by allowing the testimony and opinions of ABH's witnesses based on an argument that Appellant's psychiatric records were confidential patient treatment records. We find no merit to Appellant's seventh assignment of error. Accordingly, it is hereby overruled.

ASSIGNMENTS OF ERROR THREE, FOUR, FIVE, AND SIX

"III. THE TRIAL JUDGE ERRED BY FINDING JOHN TO BE A MENTALLY ILL PERSON SUBJECT TO HOSPITALIZATION FOLLOWING THE SEPTEMBER, 2014 EVIDENTIARY PROCEEDINGS BY MAKING AN ADDITIONAL FALSE FINDING THAT DR. JANSON 'CONCURRED' IN SUCH A NOTION WHEN THE RECORD PLAINLY SHOWS HE DID NOT, AND DESPITE THE ABSENCE OF ANY OTHER FACTUAL EVIDENCE TO SUPPORT THE ELEMENTS OF SUCH A FINDING UNDER OHIO REV.CODE SEC. 5122.01(A) OR (B).

IV. THE TRIAL JUDGE ERRED IN FINDING THAT JOHN WAS A 'MENTALLY ILL PERSON SUBJECT TO HOSPITALIZATION' BASED ON THE SEPTEMBER, 2014 OPINION TESTIMONY FROM ABH EMPLOYEE SCOTT WHEN HER TESTIMONY WAS OBJECTED TO AS NOT BASED ON ANY ACTUAL FACTS, ANY FACTS OF HER OWN KNOWLEDGE, OR ANY FACTS CONTAINED IN THE RECORD.

V. THE TRIAL JUDGE ERRED IN FINDING THAT JOHN WAS A 'MENTALLY ILL PERSON SUBJECT TO HOSPITALIZATION' BASED ON THE SEPTEMBER, 2014 OPINION TESTIMONY FROM ABH EMPLOYEE SCOTT WHEN SUCH TESTIMONY LACKED FOUNDATION DUE TO HER FAILURE TO HAVE EVER INTERVIEWED JOHN OR RULED OUT GENERAL MEDICAL CONDITIONS.

VI. THE TRIAL JUDGE ERRED DURING THE SEPTEMBER, 2014 PROCEEDINGS BY ADMITTING

OVER OBJECTION, TESTIMONY FROM STATE WITNESSES BASED ON HEARSAY, INCLUDING HEARSAY WITHIN HEARSAY FROM OFTEN UNKNOWN AND UNNAMED SOURCES, AND IN VIOLATION OF OHIO EVID. RULES 602, 702(C), 703, and 705."

## A. STANDARD OF REVIEW

**{¶ 59}** As to what constitutes "mental illness subject to hospitalization," courts are directed to employ the standards set forth in R.C. Chapter 5122 when those provisions are not in conflict with the criminal code. *State v. Johnson,* 5th Dist. Stark No. 2012-CA00231, 2013-Ohio-3691, ¶ 10. "Mental illness" is defined as a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life. R.C. 5122.01(A). *Johnson, supra*, at ¶ 11. "Mentally ill person subject to hospitalization by court order" is defined as a mentally ill person who, because of his illness, represents a substantial risk of physical harm to himself or others, represents a substantial and immediate risk of serious physical impairment or injury to himself, or would benefit from treatment in a hospital and is in need of such treatment. R.C. 5122.01(B)(1)-(4). Johnson, supra, at ¶ 12. The state must establish these elements by clear and convincing evidence in order to justify continued commitment. *State v. Johnson*, 32 Ohio St.3d 109, 111, 512 N.E.2d 652 (1987); *State v.*

*Williams* (Mar. 3, 1989), Mahoning App. No. 88CA83, unreported. "Clear

and convincing evidence" is that measure or degree of proof which is more

than a mere preponderance of the evidence, but not to the extent of such

certainty as is required beyond a reasonable doubt in criminal cases, and

which will provide in the mind of the trier of fact a firm belief or conviction

to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale*

(1991), 58 Ohio St.3d 121, 122, citing *Cross v. Ledford* (1954), 161 Ohio St.

469, paragraph three of the syllabus.

{¶ 60} A "totality of the circumstances" test is to be utilized by the

court to determine whether an alleged mentally ill person is subject to

hospitalization under R.C. 5122.01(B). *In re Burton*, 11 Ohio St.3d 147,

464 N.E.2d 530 (1984), paragraph one of the syllabus; *In the Matter of Goss,*

1992 WL 281324, *2. Factors to be considered by the court include, but are

not limited to:

> "(1) whether, in the court's view, the individual currently
> represents a substantial risk of physical harm to himself or other
> members of society; (2) psychiatric and medical testimony as to
> the present mental and physical condition of the alleged
> incompetent; (3) whether the person has insight into his
> condition so that he will continue treatment as prescribed or
> seek professional assistance if needed; (4) the grounds upon
> which the state relies for the proposed commitment; (5) any
> past history which is relevant to establish the individual's
> degree of conformity to the laws, rules, regulations and values
> of society; and (6) if there is evidence that the person's mental
> illness is in a state of remission, the court must also consider the

medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment." *Burton, supra,* at 149-150; *Goss, supra.* See also R.C. 2945.401(E) 1-6.

{¶ 61} Where the burden of proof at the trial court level is clear and convincing evidence, the trial court's judgment will not be reversed on appeal as being against the manifest weight of the evidence where it is supported by some competent, credible evidence going to all the essential elements of the case. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 566 N.E.2d 54 (1990); *Goss, supra.* See also *State v. Santana*, 8th Dist. Cuyahoga No. 95478, 2011-Ohio-3685, ¶ 12.

## B.  LEGAL ANALYSIS

{¶ 62} Because Assignments of Error III, IV, V, and VI are interrelated, we will consider them together.  In its November 3, 2014 entry, the trial court found as follows:

> "Dr. [Jean] Scott is a psychologist employed by ABH.  Dr. Scott testified she reviewed the records and reports of defendant's treatment providers and reports in his medical records and forensic files.  Dr. Scott also requested an interview with the defendant, who refused requests and would not talk with Dr. Scott.  Dr. Scott testified the defendant has schizoaffective disorder, a mental illness, and that diagnosis remains.  Dr. Scott further testified that in her opinion the defendant remains mentally ill subject to hospitalization."

{¶ 63} The entry further found:

"Defendant presented the testimony of Dr. Gregory Jansen, PhD. Dr. Janssen is a clinical psychologist who conducted an evaluation of the defendant's capacity to give informed consent to medication. During his testimony he concurred that defendant is a mentally ill person subject to hospitalization and that his current placement at ABH is an appropriate placement.

\* \* \*

Additionally, the parties presented evidence of the strained relationship between ABH and the defendant. This strain in the relationship appears to the court to be a result of defendant's perception of the "forced drugging order" which this court will address by separate entry. Plaintiff presented testimony of the disruptive behavior of the defendant, some of which defendant admits. Defendant and the witnesses on his behalf testified these actions of defendant relate to the forced drugging order and that if defendant was able to participate in his medical treatment his behavior would improve.

Based on the foregoing the court finds by clear and convincing evidence that defendant John J. Rohrer is a mentally ill person subject to hospitalization…"

1. The trial court's finding that Appellant was mentally ill subject to hospitalization was supported by competent credible evidence.

{¶ 64} Although Appellant raises various arguments within these assignments of error, he essentially challenges the trial court's general finding that Appellant is mentally ill subject to hospitalization. The trial court's entry emphasized, briefly, the testimony of Dr. Scott and Dr. Janson. The continuing commitment and motion hearings occurred over three days in September 2014. Our review of the record demonstrates that the trial

court heard lengthy testimony from additional witnesses which included Dr.

John Hamill, Dr. Sandra Pinkham, Steve Copper, and Appellant. The trial

court also heard rebuttal testimony from Dr. Timothy Hogan.

{¶ 65} Dr. Jean Scott testified to a reasonable degree of psychological

certainty that Appellant suffers from mental illness known as schizoaffective

disorder. She explained schizophrenia is a chronic mental illness that occurs

over a long period of time. Schizoaffective disorder is a combination of

schizophrenia with a mood disorder component, meaning that Appellant also

had a manic episode or major depressive episode at some point along with

the schizophrenia. In her opinion, Appellant had delusions and

hallucinations, when he was originally diagnosed in 2006 and 2007. She

testified that currently, she was seeing evidence of delusions, paranoia, lack

of cooperation with treatment providers, and irrational thinking.

{¶ 66} Dr. Scott elaborated that she had seen evidence of these

symptoms by a review of the records. Specifically, she testified that there

was evidence of mood disorder, i.e. rambling speech and a manic episode.

She testified over the course of Appellant's history, he also presented with

severe depression.

{¶ 67} Dr. Scott further testified to a reasonable degree of

psychological certainty that Appellant was subject to hospitalization due to

his mental illness. She based her opinion on the past history of Appellant's inability to function when released to a less restrictive environment. He had required a more structured environment because he was not compliant with treatment, recommendations, or medications when released from a hospital. She testified Appellant's past history of not taking his medications was documented in her report. She testified he was on a conditional release in a secured controlled structured environment when the current felony assault offense had occurred. Dr. Scott opined Appellant needed to be in an environment with even more structure than ABH provided because he was not cooperating with his treatment team and because he interfered with other patients' treatment.

{¶ 68} On cross-examination, Dr. Scott acknowledged she was not able to testify about Appellant's medications or rule out organic causes of Appellant's behavior because she is not a medical doctor. She reiterated that her diagnoses of mental illness was based on the medical records and hospital records reviewed and nothing within her direct knowledge.

{¶ 69} The next witness was Dr. John Hamill, a licensed physician in Ohio employed at ABH as staff psychiatrist. Dr. Hamill was declared an expert in the field of psychiatry by the trial court. Although Dr. Hamill's

testimony addressed the forced medication order, we find his testimony

relevant in that it also addresses Appellant's symptoms of mental illness.

{¶ 70} Dr. Hamill testified he was not familiar with Appellant,

because Appellant had refused to talk to him, but he had done a capacity

assessment for purposes of the forced medication order. Dr. Hamill based

his capacity assessment, in part, on Appellant's refusal, a review of the Twin

Valley documents, and Dr. Scott's report.

{¶ 71} Dr. Hamill's capacity assessment report was designated

State's Exhibit B. He testified he prepared the report and it was reviewed by

two other doctors who concurred with his opinions. Dr. Hamill opined to a

reasonable degree of psychiatric certainty that Appellant did not have

capacity to give or withhold informed consent regarding treatment. He

further testified to a reasonable degree of psychiatric certainty, that the

benefits of Appellant's forced medication order outweigh the risk of side

effects of medication.[9] He testified Appellant had been violent without the

medications during two felonies. Dr. Hamill further testified that he had

seen nothing which made him believe any medication prescribed, street

drug, or general medical condition would be causing Appellant's current

---

[9] The medication specifically at issue was Risperdal.

mental illness. He also testified no medical conditions or outward signs/symptoms would explain Appellant's psychosis.

{¶ 72} Dr. Gregory Janson testified on behalf of Appellant. Dr. Janson holds a Ph.D. in clinical counseling and is licensed to independently diagnose and treat mental and emotional disorders in the state of Ohio. He was declared an expert in the field of psychology. Dr. Janson also prepared a capacity assessment in order to determine if Appellant could give informed consent. Dr. Janson testified he did a three-hour evaluation of Appellant and had seen him 2-3 times since the initial evaluation. Dr. Janson's report was admitted as Defense Exhibit 1. Dr. Janson opined, to a reasonable degree of psychological certainty, that Appellant was capable of giving informed consent. Dr. Janson testified he saw no evidence of hallucinations, psychosis, or delusions while he was talking to Appellant. However, on cross-examination, Dr. Janson acknowledged he is not a medical doctor

{¶ 73} Dr. Sandra Pinkham, a licensed medical doctor in the State of Ohio, also testified on behalf of Appellant. She was qualified as an expert in general medicine. She testified she has treated Appellant since 1997. Dr. Pinkham prepared a report which was admitted as Defendant's Exhibit 2. She testified her report was based on her physical examination, the history provided by him and his mother, and the treatment and medication records.

Dr. Pinkham testified to a reasonable degree of scientific certainty that Appellant was competent of making determinations about his own medication. She opined he did not need to be hospitalized. She testified he was not a threat to himself or the community.

{¶ 74} On cross-examination, Dr. Pinkham testified she believed Appellant had problems of post-traumatic stress disorder, problems getting along with people in authority, and hypoglycemia. She testified she saw no evidence that he had been violent without provocation. She testified Appellant had a history of psychotic behavior but was not psychotic at this point. She testified her decision as to the cause of his psychosis in 2006 was based on the history Appellant provided.

{¶ 75} Appellant's next witness was Steve Copper, a certified peer specialist and certified mental health educator for the State of Ohio. He has never met Appellant, but testified he would be available for him to provide peer support.

{¶ 76} Appellant also testified and again, while his testimony relates chiefly to the forced medication order, we find it relevant here as well. Appellant stated he understood the issues before the court, i.e. the forced medication order, the continued commitment, and possible transfer to another hospital. Appellant admitted he physically resisted medication on

four occasions. He testified he stopped resisting because his girlfriend and mother were concerned; he considers himself a pacifist; and he did not want to receive physical injuries. He testified he asked for his dosages to be reduced because he feels better when he's off medication; his emotions are dulled. He also doesn't like specific side effects which he contributes directly to the injections. He attributes his side effects to both the chemical being injected and the trauma of being injected. It is not his intention to go completely off his medication.[10] On cross examination, Appellant admitted he had not taken any controlled substances or street drugs since he had been at Twin Valley or ABH. He admitted in 2006 and 2009 he was using illegal substances and alcohol.

{¶ 77} Dr. Scott was then recalled to testify as to an addendum to her report which documented incidents over the weekend of September 20 and 21, 2014. Dr. Scott testified on September 20, 2014, Appellant verbally attacked two nurses after another patient was medicated. On September 21, 2014, Appellant began screaming while a patient was being medicated. In turn other patients began screaming. Appellant brought other patients to stand outside a closed restraint room and talked to them about alleged illegal actions of psychiatric hospitals. At one point, a female patient punched the

---

[10] The medication at issue is Risperdal.

restrained door and told staff that Appellant was scaring her. Other patients acted in an agitated manner. Dr. Scott testified Appellant's actions left staff and patients fearful. Dr. Scott restated her opinion that Appellant should be transferred to the Moritz Unit.

{¶ 78} Further, Dr. Timothy Hogan was called on rebuttal. He testified he is a medical services physician at ABH. He testified he performs annual physical exams and does general blood screenings, much like the work of a family doctor. He was qualified as an expert in medicine.

{¶ 79} Dr. Hogan testified he had several encounters with Appellant and had performed general blood tests in September and April 2014. He opined to a reasonable degree of medical certainty there was no indication Appellant's psychosis was a result of his magnesium or thyroid levels. On cross-examination, Dr. Hogan admitted he did not know what Appellant's thyroid levels or magnesium levels had been in 2006 or 2009.

{¶ 80} In this matter, the trial court's finding that Appellant remains mentally ill was supported by clear and convincing evidence and further, the conclusion that he remains subject to hospitalization was supported by a totality of the circumstances. As such, we find competent credible evidence supported the trial court's decision. We acknowledge there was much conflicting testimony.

{¶ 81} Dr. Scott opined that Appellant was mentally ill, remained subject to hospitalization, and should be transferred to a more restrictive environment. From both Dr. Hamill and Dr. Janson's testimony, it may be inferred that they considered Appellant to be mentally ill. However, Dr. Hamill opined to a reasonable degree of psychiatric certainty that Appellant did not have capacity to give or withhold informed consent regarding treatment, while Dr. Janson opined to a reasonable degree of psychological certainty that Appellant did have the capacity to make informed consent. There was also conflict between the testimony of Dr. Pinkham and Dr. Hogan. Dr. Pinkham testified to a reasonable degree of scientific certainty that Appellant was competent to make determinations regarding his own treatment. She had treated Appellant since 1997. She further opined he did not need to be hospitalized. While Dr. Scott was unable to rule out organic causes of Appellant's mental problems, Dr. Hogan, called on rebuttal, testified that there was no indication, based on tests he had performed in April and September 2014, that Appellant's mental illness was a result of low magnesium or thyroid levels.

{¶ 82} All the witnesses, though experts in their own fields, had weak as well as strong areas in their testimonies. The trier of fact is free to believe all, part or none of the testimony of each witness. *State v. Crocker*, - -

N.E.3d - -, 2015-Ohio-2528 (4th Dist.), ¶ 22. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *Johnson, supra,* at ¶ 23, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118. Accord, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). We are further guided by the presumption that the findings of a trial court are correct since the trial judge "* * * is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighting the credibility of the proffered testimony." *State v. Thomas,* 4th Dist. Lawrence No. 92CA32, 1993 WL 293636, *5, quoting *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, (1991), citing *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 83} In this case, Appellant also testified on his own behalf. While the trial court apparently found parts of his testimony believable, to the end of terminating the forced medication order, the trial court also was in the better position to view Appellant and all the other witnesses, observe their demeanor, and weigh their credibility. For instance, while Appellant argues

Dr. Scott's testimony, as a representative of ABH, is biased, Dr. Scott

actually recommended Appellant be removed to another, more restrictive

facility.[11]  While Dr. Pinkham testified that Appellant was competent of

making decisions and did not need to be hospitalized, her opinions were

based, in part, on history provided by Appellant and his mother which may

be considered at least partly self-serving.  While Appellant may have been

convincing to the degree that the trial court terminated the forced medication

order, his testimony regarding his behavior and his reasons for becoming

violent may also be considered self-serving.

{¶ 84}  Additionally, two of the evaluators, Dr. Scott and Dr. Hamill,

relied upon records they reviewed due to Appellant's failure to agree to

speak to them.   The trial court likely weighed the fact that these evaluators

did not see Appellant in person.  However, the trial court also had the

testimony of two doctors who did meet Appellant in person.  Dr. Janson was

not a medical doctor, however, and Dr. Pinkham admitted she relied on the

history given by Appellant and his mother in making her diagnosis.

> "Credibility, intelligence, freedom from bias or prejudice,
> opportunity to be informed, the disposition to tell the truth or
> otherwise, and the probability or improbability of the
> statements made, are all tests of testimonial value.  Where the

---

[11] Interestingly, Dr. Scott also testified she was not Appellant's treating psychologist.  She explained that when a client came into ABH as a NGRI acquittee, a client is assigned a treating physician and an evaluator.  She was assigned as Appellant's evaluator.  The evaluator's role is to remain independent which is why she had not participated in his treatment or therapy.

evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." *Johnson, supra*, at ¶ 24. See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

The *Johnson* court held:

"It is of no consequence that the trial court's findings are in contravention of Johnson's or any other witnesses' testimony. *Disciplinary Counsel v. Zingarelli,* 89 Ohio St.3d 210, 217, 729 N.E.2d 1167 (2000). Because the record does not weigh heavily against the findings of the trial court, "we defer to the [trial court's] credibility determinations, inasmuch as the [trial court] saw and heard [the witnesses] firsthand." *Cuyahoga Cty. Bar Assn. v. Wise,* 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24."

{¶ 85} Likewise, we defer to the trial court's credibility determinations in this matter because the trial judge was able to see and hear all the witnesses, including Appellant. Based on our review of the record, as well as the applicable law, we find no error in the trial court's finding that Appellant remains mentally ill subject to hospitalization.

2. The trial court's finding that Dr. Janson "concurred" can be inferred from his testimony.

{¶ 86} The testimony of Dr. Janson has been set forth at length above. Although he is recognized as an expert in psychology, he acknowledged he is not a medical doctor. Dr. Janson's testimony spoke directly to the issue of Appellant's medications and the forced medication order in place. Dr. Janson's testimony was, in sum, that he believed

Appellant was capable of giving informed consent. He did not give an explicit opinion as to whether or not Appellant was mentally ill. However, Dr. Janson ended his testimony by concluding that ABH was an appropriate placement for Appellant at the time of the hearing. From this, the trial court logically inferred that Dr. Janson concurred that Appellant was mentally ill subject to hospitalization. Similarly, we observe Dr. Hamill did not specifically state that Appellant was mentally ill, yet this can be inferred from his testimony. We see no abuse of discretion with the trial court's finding in this regard and, therefore, find no merit to Appellant's arguments. As such, we overrule the third assignment of error.

> 3. The trial court did not abuse its discretion by admitting Dr. Scott's opinion testimony although Appellant claims she lacked personal knowledge, failed to interview him, and failed to rule out general medical conditions.

{¶ 87} " 'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *Crocker, supra,* at 49, quoting, *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 185, quoting *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. We will not reverse the trial court's decision absent an abuse of discretion, which implies an unreasonable, unconscionable, or arbitrary attitude. *State v. Inman*, 4th Dist. Ross No. 13CA3374, 2014-Ohio-786, 2014 WL 861499, ¶ 20.

**{¶ 88}** Dr. Scott's September 2014 testimony was given at a continued commitment hearing, pursuant to R.C. 2945.401, which requires ABH to report to the court periodically regarding Appellant's mental health status. R.C. 2945.401 provides:

> "(C) The department of mental health and addiction services or the institution, facility, or program to which a defendant or person has been committed under section 2945.39 or 2945.40 of the Revised Code shall report in writing to the trial court, at the times specified in this division, as to whether the defendant or person remains a mentally ill person subject to court order or a mentally retarded person subject to institutionalization by court order and, in the case of a defendant committed under section 2945.39 of the Revised Code, as to whether the defendant remains incompetent to stand trial. The department, institution, facility, or program shall make the reports after the initial six months of treatment and every two years after the initial report is made. The trial court shall provide copies of the reports to the prosecutor and to the counsel for the defendant or person. Within thirty days after its receipt pursuant to this division of a report from the department, institution, facility, or program, the trial court shall hold a hearing on the continued commitment of the defendant or person or on any changes in the conditions of the commitment of the defendant or person."

**{¶ 89}** Appellant argues Dr. Scott's opinions, which were based upon her written report required by law, were given in violation of Evidence Rules 602, 702, 703, and 705. Evid.R. 602 provides that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evid.R. 702 provides that a witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

{¶ 90} Evid.R. 703 provides that the fact or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing. Evid.R. 705 provides that the expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data.

{¶ 91} We disagree with Appellant's contention that the trial court abused its discretion in allowing Dr. Scott's opinion testimony for lack of personal knowledge. The transcript of the September 2014 hearings reveals that Dr. Scott was qualified as an expert witness in the field of psychology under 702, based on her testimony that she is a licensed psychologist in the State of Ohio, determines diagnoses of mental illnesses, and writes continuing commitment reports.

{¶ 92} Dr. Scott testified Appellant refused to speak with her so she reviewed Appellant's records and spoke to his treating psychologist. Her testimony was based on evidence which was properly before the court,

which included the ABH records and reports properly submitted to the court as previously discussed in our resolution of Assignment of Error Seven. This fulfills the requirements of 602 and 703, that an expert witness base an opinion on personal knowledge or facts admitted into evidence at a hearing. Having fulfilled the above requirements, Dr. Scott's opinion testimony was proper under Evid.R. 705.

{¶ 93} We also disagree with Appellant's contention that Dr. Scott's failure to interview him caused an abuse of discretion. While R.C. 2945.401, the continued commitment statute, does not explicitly state what evidence is to be considered by the trial court, R.C. 2945.40(D) provides that in an initial commitment hearing, the trial court may consider all relevant evidence. Dr. Scott considered Appellant's failure to meet with her to be some evidence of his mental illness. Appellant's argument has no merit in the sense that by his acknowledgment that he refused to meet with Dr. Scott on the advice of counsel, he cannot now complain that Dr. Scott's opinion is deficient or erroneous when he invited such an outcome by his own failure to cooperate.

{¶ 94} Finally, we disagree that the trial court erred by allowing Dr. Scott's testimony when she failed to rule out general medical conditions. Dr. Scott testified she was not a medical doctor. This was brought out by

Appellant's counsel on cross-examination.  An expert's credentials go to the weight, not the admissibility, of her testimony. *State v. Hart,* 94 Ohio App.3d 665, 641 N.E.2d 755 (1st Dist. 1991).

{¶ 95}  Based on the foregoing, we find no abuse of discretion and therefore, no merit to Appellant's arguments under Assignments of Error Four and Five.  As such, we overrule both assignments of error.

<u>4.  The trial court did not abuse its discretion by admitting testimony from state witnesses to which Appellant objected.</u>

{¶ 96}  Appellant also argues that Dr. Hamill's testimony was improper expert testimony demonstrated by the doctor's lack of personal knowledge and reliance on hearsay psychiatric reports.  We disagree.

{¶ 97}  Based on his credentials as a licensed physician in Ohio, and his employment as a staff psychiatrist, Dr. Hamill was declared an expert in psychiatry.  Dr. Hamill's report, properly admitted, was State's Exhibit B.  Dr. Hamill opined to a reasonable degree of psychiatric certainty that Appellant did not have capacity to give or withhold informed consent regarding treatment.  Like Dr. Scott, Dr. Hamill was required by statute to prepare a competency evaluation.  Appellant also refused to meet with Dr. Hamill, so, like Dr. Scott, Dr. Hamill had to rely on a records review, in part, to form his opinions. As discussed above, Dr. Hamill's report and opinions relied upon facts properly in the record.  For the reasons set forth fully above

in our resolution of Assignments of Error Three, Four, and Five, we find no

merit to Appellant's argument. As such, we overrule Assignment of Error

Six.

ASSIGNMENT OF ERROR EIGHT

"VIII. THE TRIAL JUDGE ERRED BY SUMMARILY
DENYING APPELLANT'S JULY 15, 2014 JURY DEMAND
FILED ONCE IT BECAME APPARENT THAT THE TRIAL
JUDGE WOULD ERRONEOUSLY ASSUME
JURISDICTION IT DID NOT HAVE."

{¶ 98} Appellant argues the trial judge never reconsidered the

denial of the July 15, 2014 jury demand after the judge ruled the court had

jurisdiction. Appellant briefly argues that due process was denied in 2014,

as well as in 2010, when the right to jury trial was never explained, just

denied.

{¶ 99} Again, Appellee points out that R.C. 2945.401 governs

the continuing jurisdiction of the court after an insanity acquittal. R.C.

2945.401(F) provides that acquittees have the same rights as defendants at

commitment hearings pursuant to R.C. 2945.40(C). Pursuant to R.C.

2945.40(C):

"If a person is found not guilty by reason of insanity, the person
has the right to attend all hearings conducted pursuant to
sections 2945.37 to 2945.402 of the Revised Code. At any
hearing conducted pursuant to one of those sections, the court
shall inform the person that the person has all of the following
rights:

(1) The right to be represented by counsel and to have that counsel provided at public expense if the person is indigent, with the counsel to be appointed by the court under Chapter 120. of the Revised Code or under the authority recognized in division (C) of section 120.06, division (E) of section 120.16, division (E) of section 120.26, or section 2941.51 of the Revised Code;

(2) The right to have independent expert evaluation and to have that independent expert evaluation provided at public expense if the person is indigent;

(3) The right to subpoena witnesses and documents, to present evidence on the person's behalf, and to cross-examine witnesses against the person;

(4) The right to testify in the person's own behalf and to not be compelled to testify;

(5) The right to have copies of any relevant medical or mental health document in the custody of the state or of any place of commitment other than a document for which the court finds that the release to the person of information contained in the document would create a substantial risk of harm to any person."

Obviously the right to jury trial is not included among those enumerated above, which must be explained to a defendant.

{¶ 100}  In *In re Kister,*194 Ohio App.3d 270, 2011-Ohio-2678, 955 N.E.2d 1029 (4th Dist.), we pointed out an individual does not possess a constitutional or statutory right to a jury trial during a probate court proceeding involving an involuntary commitment. *Id*. at 52.  We further noted that *Kister* had pointed to no provision in the involuntary commitment

statutes which would entitle him to a jury trial.  The same is true here.

Appellant has directed us to nothing in the case law or Ohio statutes which

supports his argument herein.  As such, Appellant's assignment of error is

without merit and is hereby overruled.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:  Concurs in Judgment and Opinion.
Harsha, J.:  Concurs in Judgment Only.

For the Court,

BY: _____
Matthew W. McFarland,
Administrative Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**